CEDAR RAPIDS, IOWA FALLS & NORTHWESTERN RAILWAY COMPANY *vs.* WILLIAM M. RAYMOND and another.

### July 14, 1887.

**Eminent Domain—Evidence—Proof of Highway on the Land.**—Upon the trial of a cause for the assessment of damages for the taking of land for a railway, the fact of the existence of a highway upon the land, being a collateral matter, may be shown by oral evidence.

**Same—Damages—Reservation of Private Crossing.**—The general statute law relating to such condemnation proceedings contemplates that such rights of private use of the land taken as are of a nature to interfere with the operation of the railroad shall be determined and defined in the condemnation proceedings, and the land-owner has not a reserved right of private crossing unless so defined. Compensation to the land-owner is to be assessed accordingly.

**Same—Damages—Evidence.**—Evidence that the land, a part only of which is taken, is so near to the railroad depot and stock-yards as to show that the land will be subject to extraordinary use on that account, is admissible.

**Same—Increased Insurance.**—As affecting the market value of the property, the fact may be shown that the railroad increases the rate of insurance upon buildings already erected.

**Same.**—Amount of damages awarded, considered as justified by the evidence.

The Cedar Rapids, Iowa Falls & Northwestern Railway Company appealed to the district court for Rock county from an award of com-

missioners appointed in proceedings to condemn land of the respondents for the use of the railway company. A trial was had before *Perkins*, J., and a jury. The railway company appeals from an order refusing a new trial.

*Daniel Rohrer*, for appellant.

*Chas. C. Willson* and *E. H. Canfield*, for respondents.

DICKINSON, J.[1] This appellant is a railway corporation of Iowa, having authority (see Gen. St. 1878, *c.* 34, § 106) to extend its road into this state, and for that purpose to exercise the power of eminent domain conferred upon like domestic corporations by our general laws. The corporation instituted proceedings by petition for the condemnation, for its right of way, of a strip of land 100 feet wide off the west side of a 20-acre tract owned by the respondents. Upon the trial in the district court upon appeal from the award of commissioners, the land-owner was allowed to testify to the existence of a public travelled highway on the west side of this land. This was not error, although there may have been record evidence of the existence of the highway; the fact thus sought to be shown being of a collateral nature.

Evidence was presented that there were no other highways touching this land, and that the only public way by which the land was accessible was this public highway on the west, which, after the construction of the railroad, could only be reached from this land by crossing the railroad track. The petition of the company for condemnation did not restrict the use to be made by it of the land condemned, or provide for the reservation to the land-owner of any right to cross the track, nor did the order of the court for the appointment of commissioners make any such reservation to the land-owner. The court instructed the jury that they should assess the damages upon the basis that the land-owner would have no right of crossing over the track. The correctness of this instruction is the principal point in the case.

The general law under which these proceedings were had provides for a petition to the district court by the corporation, describing "the

[1] Berry, J., because of illness, took no part in the decision of this case.

lands, property, and estate which it will be necessary to take, use," etc., and praying the appointment of commissioners to assess the compensation. Provision is made for notice and hearing upon the petition. "The court may also, in its discretion, in and by said order, [appointing commissioners,] limit the easement to be acquired, by reserving to the land-owner such rights and privileges therein, and to be defined in such order, as shall not be incompatible with the use for which the land is sought to be appropriated; such rights and privileges to be exercised and enjoyed in such manner, at all times, as not to injure or interfere with the railway track or structures or other improvement for which the land is to be appropriated, or the free and legitimate use of the same for the purpose of such railway." Laws 1879, c. 35.

The charters of many of the railroads in this state have made express provision in respect to farm crossings. The general law to which we have referred does not. The railroad company, in its petition, might claim, and, if its claim were allowed by the court, it might secure, a right of way in its nature exclusive, excluding the land-owner from any private right of crossing which could interfere with the railroad use, such as a private crossing at grade. In some localities such an exclusive right would be expedient, and perhaps necessary. On the other hand, the company might not require such an exclusive right. Its proposed uses might be such that there could be safely left to the land-owner a private right of way over the railroad; and in the condemnation proceedings it might properly seek to require the more limited easement. But the nature of the right of way to be acquired, whether or not it is to be qualified by any remaining right of the land-owner to use the track as a private way, is an important question in the proceedings for condemnation, both as respects the compensation to be awarded for the taking, and as affecting the subsequent rights of the parties to the use of the land. It is for the railroad company, seeking the appropriation of lands to its use, to indicate in its petition the nature and extent of the easement proposed to be taken.

The easement thus sought to be acquired may be limited by the order appointing commissioners to assess compensation "by reserving

to the land-owner such rights and privileges therein, and to be defined in such order, as shall not be incompatible," etc.   We are of the opinion that this statute contemplates that the "reserved" rights of the land-owner, such as that here in question, which are of a nature to interfere with the possession and operation of the railroad, shall be determined and defined in the condemnation proceedings. As to private crossings over the road, there is not to be left, as a subject of future controversy, the question whether, in a particular case, they are necessary, and whether they can be allowed without endangering public travel, or interfering with the uses which, for reasons affecting the public, are conferred upon the railroad company.   Upon this construction of this statute, the charge of the court was right, as was also its refusal to give the appellant's requested instruction. There being no reserved right of crossing, the measure of compensation could not be affected by the fact that the company had put in a crossing at the request of the land-owner, the right to use it being dependent upon the will of the company.   *Ham* v. *City of Salem*, 100 Mass. 350; *Drury* v. *Midland R. Co.*, 127 Mass. 571.

Evidence was admissible of the location of the railway station 200 feet south of this land, and of its stock-yards just north of the land; for that would tend to show the extent of the use to which the land in question would be subjected.   The injury caused by the taking of land in close proximity to a station might well be deemed to be greater than if it were at a considerable distance from it, because of the more frequent passing of trains and locomotives to be expected about railway stations.   Such evidence, however, should only be received where the situation is such as to render it reasonably certain that the land will in fact be subjected to such extraordinary use.

Evidence was introduced on the part of the land-owner of the market value of the buildings upon the premises, and that the rate of insurance would be increased at least 1 per cent. a year by the proximity of the road.   The evidence was admissible as tending to show diminution in the value of the property.   *Colvill* v. *St. Paul & Chicago Ry. Co.*, 19 Minn. 240, (283;) *Curtis* v. *St. Paul, S., & T. F. R. Co.*, 20 Minn. 19, (28.)   The court properly instructed the jury that this element was only to be considered as affecting, if it did do so, the market

value of the land. *Curtis* v. *St. Paul, S. & T. F. R. Co., supra; County of Blue Earth* v. *St. Paul & Sioux City R. Co.,* 28 Minn. 503, (11 N. W. Rep. 73.)

The evidence was sufficient to justify the amount of compensation awarded by the jury. The fact that it appeared upon cross-examination that some of the several witnesses whose opinions as to the amount of damages had been given, based their estimate in part upon improper considerations—as the damage resulting from the proximity of the stock-yard to this land—does not leave the verdict without reasonable and sufficient evidence to support it.

There were some assignments of error to which we have not deemed it necessary to particularly refer. We think they are not sustainable.

Order affirmed.

MITCHELL, J. I am not prepared to say that evidence of the location of the railway depot and stock-yards was competent for any such purpose as indicated in the foregoing opinion, but I do not think that the evidence in fact admitted on that point could have prejudiced the appellant. I therefore concur in the result.