THE SANITARY DISTRICT OF CHICAGO

*v.*

MICHAEL F. LOUGHRAN *et al.*

*Filed at Ottawa January 20, 1896—Rehearing denied March 13, 1896.*

1. APPEALS AND ERRORS—*verdict in condemnation—how far final on appeal.* A verdict determining the market value of land condemned upon the basis that some of it is underlaid by merchantable limestone, rendered upon conflicting evidence and the personal examination of the jury, will not be disturbed on appeal, although the court might, as an original proposition, have reached a different conclusion.

2. SAME—*when admission of incompetent evidence will not reverse.* The admission of incompetent evidence as to the value of land condemned is not cause for reversal where the jury were properly instructed, and it cannot be inferred that the compensation fixed was affected by such evidence.

3. EVIDENCE—*in condemnation—value of stone quarry—basis of witness' opinion.* Although evidence of profits which could be realized by operating the quarries upon land condemned is inadmissible to show its value, the witness who gives his opinion as to the value of such land may state such profits as the ground upon which he bases his opinion.

4. SAME—*revocable license to cross highway with track is incompetent.* A record showing permission of highway commissioners to maintain a switch track from land condemned, across a public highway, is incompetent upon the question of the value of such land, as such authority is, at most, a mere revocable license.

5. SAME—*accessibility of stone quarry as affecting value, in condemnation.* An owner whose land is sought to be condemned may prove its situation, and the facilities for ingress to and egress from it, as affecting its value, although no cross-petition is filed, as is necessary where recovery of damages to other lands is sought.

6. DAMAGES—*measure in condemnation—possible future increase in value not proper.* The present value of land condemned is the proper measure of damages for its condemnation, although such value is added to by the prospective improvement for which it is condemned. But possible increase in value on account of such improvements cannot be considered.

APPEAL from the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

GEORGE E. DAWSON, and HALEY & O'DONNELL, for appellant:

The market value of the land sought to be taken is the true measure of compensation for the lands actually taken. *Railroad Co.* v. *Jacobs,* 110 Ill. 414; 6 Am. & Eng. Ency. of Law, 567; Lewis on Eminent Domain, sec. 479.

Where the land taken contains minerals, the measure is the sum that would be given for the land with minerals in it, and any inquiry as to the profits or the price or value of the minerals if the minerals themselves had been taken out will not be permitted.  6 Am. & Eng. Ency. of Law, 568; *Burt* v. *Wigglesworth,* 117 Mass. 302; *Burt* v. *Insurance Co.* 115 id. 1; *Fairbanks* v. *Fitchburg,* 110 id. 224; *Gardner* v. *Inhabitants,* 127 id. 358; *Brown* v. *Railroad Co.* 5 Gray, 35; *Wesson* v. *Iron Co.* 13 Allen, 95.

Highway commissioners have no powers except those conferred by the statute, and can perform no act imposing burdens except those plainly authorized by the statute. *Railroad Co.* v. *People ex rel.* 123 Ill. 648; *Brauns* v. *Town of Peoria,* 82 id. 11; *Johnson* v. *Rea,* 12 Ill. App. 331; *Hicks* v. *Silliman,* 93 Ill. 255; *Railroad Co.* v. *Rich,* 101 id. 157.

HILL, HAVEN & HILL, for appellees:

If the property has a special value for any cause, that special value belongs to the owner, and compensation must be made to him for the value of his land.   It is the value which he has and of which he is deprived that must be made good to him. *Hercules Iron Works* v. *Railroad Co.* 141 Ill. 500; *Railroad Co.* v. *Kirby,* 104 id. 348; *Railroad Co.*

v. *Jacobs*, 110 id. 416; *Railroad Co.* v. *Catholic Bishop*, 119 id. 530; *Johnson* v. *Railway Co.* 111 id. 419.

Mr. JUSTICE WILKIN delivered the opinion of the court:

This appeal is prosecuted from a judgment of the circuit court of Will county, condemning real estate of appellee for the right of way of appellant. The lands, all of which were sought to be taken, are described in the petition as tracts 38, 39, 42, 43 and 48,—in all 133.37 acres. No cross-claim was made for damages to other lands. The only question, therefore, before the court and jury on the trial was the value of the several tracts of land. The petitioner, having offered in evidence certain maps showing the contemplated work in that vicinity, the jury were taken upon the premises for the purpose of examining the same, after which the testimony of witnesses on either side was heard. By their verdict the jury found and awarded the just compensation to be paid to defendant by petitioner for each of the five tracts, separately, the aggregate amount being $30,337.

The testimony of witnesses for the respective parties as to the value of the lands differs more widely than is usual even in cases of this kind. This results, in part, at least, from the fact that they base their estimates upon entirely different uses to which the land may be appropriated. Those in behalf of petitioner estimate it as grazing or farm lands, giving it as their opinion that it is valuable for no other purpose, and they fix its value at about $100 per acre. On the other hand, respondents' witnesses are of the opinion that there are underlying it large quantities of merchantable limestone, and value it accordingly at from $500 to $1000 per acre. It will be seen from the number of acres involved, and the whole amount of compensation allowed, that the jury estimated the entire body at about $250 per acre.

If it were true, as contended by appellant, that no part of the land is valuable for quarry purposes, the verdict

would be contrary to all the evidence, and therefore not sustainable, even though the jury viewed the premises. (*Atchison, Topeka and Santa Fe Railroad Co.* v. *Schneider,* 127 Ill. 144.) It is not, however, contended, as it could not be with candor, that the evidence does not tend to prove that at least portions of it will, when developed, be valuable for the underlying stone. How much of it would prove so was necessarily a matter of opinion, based upon a single test pit and an examination of the surface by witnesses of experience in the stone business in that locality, no quarries having yet been developed. Manifestly the valuation was fixed by the verdict on the basis that some of it was underlaid with merchantable limestone. The extent to which that fact would tend to increase its market value was a question to be determined by the jury from all the conflicting evidence in the case, together with their personal examination of the premises. In such case this court will not disturb the verdict, although it might, as an original proposition, have reached a different conclusion. *Metropolitan West Side Elevated Railroad Co.* v. *Johnson,* 159 Ill. 434, and cases there cited.

It is not denied that the owner was entitled to receive the highest price for which the land could be sold for any purpose, nor that, if it has a special value by reason of its being stone-producing land, the owner is entitled to compensation according to its value as such. It is said, however, the court below admitted incompetent evidence at the instance of respondent, over objection of petitioner, to its prejudice. This alleged error as to several of the witnesses is illustrated in the argument by the testimony of H. T. Keltie, introduced by the defendant. After giving his experience in quarrying and handling stone in and about the city of Joliet, he stated that he had examined this land and the test pit made upon it, and was of the opinion that limestone could be profitably quarried therefrom. On that basis he estimated it to be worth $900 per acre. He was then asked:

Q. "From your experience, from your knowledge of the quarry business, from your experience in quarrying and shipping stone, will the land where the Loughran test pit is located be a profitable investment to the purchaser at $900 per acre?

A. "Yes, sir.

Q. "Have you figured out what this land would be worth for rubble stone?

A. "Yes, sir.

Q. "Will you please give us your figures?

A. "It would be worth $1732.32 per acre.  I figured it at sixteen feet deep and twenty-five cents per cord for rubble.  I take fifteen cents a cord off for stripping, leaving ten cents a cord.  I think it is a very low estimate. We usually get forty cents a cord royalty.  By royalty I mean, any person that leases a stone quarry leases it at so much per cord for royalty, and then they have the profit over and above twenty-five cents.  If you find stone such as is found in quarries it would increase the value of the land.

Q. "To what extent?

A. "If you got two cents a foot for the stone it would be worth $871.20 just for one layer,—for one thickness of stone,—or three inches in thickness, in an acre of land. That is what we get for one ledge."

It is insisted that by permitting this mode of examination the defendant was allowed to prove the value of his land by showing profits which could probably be realized by operating quarries upon it.  The correctness of the rule quoted by counsel from volume six, page 568, of the American & English Encyclopedia of Law, is not questioned.  It is as follows:  "Where property is taken for public purposes, the measure of compensation to be paid to the owner is its market value.  *  *  *  Where the land taken contains minerals, the measure is the same that would be given for the land with minerals in it; but any inquiry as to the profits, or the price or value of the min-

erals, if the minerals themselves had been taken out, will not be permitted." The same doctrine has been announced by this court in *Jacksonville and Southeastern Railway Co.* v. *Walsh*, 106 Ill. 253, where it is said (p. 255): "There can be no plainer proposition than the cash value of the property condemned was the sum appellee was entitled to recover as damages. All legitimate evidence tending to establish that sum was proper, and all evidence that tended to enhance the damages above or reduce them below that sum was illegitimate and improper. The inquiry should have been confined to the market value of the property, and all evidence of the amount of business that was or could be done in it, or the probable profits arising therefrom, was improper and should have been rejected. The purposes for which it was used and designed, its location and advantages as to situation, were proper matters of consideration by the jury, but the profits of the business of the past and conjectural profits for the future were too speculative and uncertain upon which to ascertain the market or cash value of the property." The evidence referred to was the sale of liquor in a saloon each day and the profits accruing from the same, and it was said: "Such sales depend so largely upon varying circumstances that the damages are purely speculative." Whatever may be said as to the form of the questions here objected to, we do not understand that their object was to prove the market value of the land by merely showing profits which could be realized from it. The witness had already given his opinion as to the purposes for which the land could be profitably used, and fixed its value at so much per acre. The questions following did no more than to call upon the witness for the grounds upon which he based his opinion, and for that purpose were proper. His testimony as to profits and royalty went only to the credibility and weight of his evidence as to the estimate he placed upon the land. It clearly appears from his testimony, both in chief and

upon the cross-examination, that he did not fix the value, $900 per acre, upon his estimate of profits or royalty. He adhered to the opinion that the fair cash value was $900, notwithstanding his estimate of profits or royalty which could be realized made it worth many times that sum. It is also manifest from the verdict and the instructions given by the court that the jury did not make their estimate of compensation upon any speculative basis as to profits.

Defendant offered in evidence the record of a proceeding before highway commissioners, purporting to give him permission to lay and maintain a switch track across a public highway located on the south line of his land. This testimony was objected to, but the objection overruled. We think it should have been sustained, as the testimony was incompetent. It is not claimed that a switch had been actually put down, but it seems to have been the theory of counsel for defendant that the permit to do so amounted to a right appurtenant to the land, which could be properly considered by the jury in fixing its fair cash value. At most, the authority given by the commissioners was a mere license, revocable at their pleasure. We know of no law giving such officers power to vest an interest in public roads for private purposes, and think no such authority can be found. While we are of the opinion that this evidence should have been excluded, we do not think the admission of it was such prejudicial error as to reverse the judgment below. That fact, so far as we are able to discover from the evidence, was not considered by any of the witnesses as adding to the value of the land. The jury were instructed repeatedly, at the instance of both parties, that the compensation to which the defendant was entitled was "the fair cash market value of the *land sought to be taken*," and no mention whatever is made of rights or appurtenances pertaining thereto. It cannot be fairly inferred that the

amount of compensation fixed by the jury was affected, in the slightest degree, by this objectionable proof.

Defendant was allowed to testify, over objection, that he had a railroad switch connecting his land with the Chicago and Alton switch, extending south through the prairie, etc.; that it was put in by the railroad company and paid for by him, stating the amount which he paid. It is contended that this was error, as counsel say, for the reason, principally, that no cross-petition was filed. It seems to be thought because the switch extended across land not described in the petition, evidence of its being there could only be introduced upon a cross-claim for damages to adjacent or contiguous land. This, we think, is a misapprehension. While it is true that a cross-petition is necessary where the defendant seeks to recover damages to other lands, he has the undoubted right, in the absence of such a petition, to prove the situation and facilities for ingress to and egress from the premises sought to be taken, as affecting its value. What the defendant paid for putting in the switch was of no consequence. It was in no way made the basis of an estimate of just compensation. The court instructed the jury, at the request of petitioner, that if the switch was extended on land of third persons without their consent, such persons would have the right to remove the same at any time. But there is nothing in the case to indicate that damages were claimed or allowed for any part of the switch, especially not situated on the land in question.

It is finally objected that the trial court erred in giving this instruction on behalf of defendant:

"The defendant in this case is entitled to the fair cash market value, on the 29th day of August, A. D. 1894, of the property sought to be taken, regardless of the causes that gave it value at that time. If the jury believe, from the evidence in the case, including their own view, that the value of said property on that day was owing, in whole or in part, to the projection of the work upon the

drainage canal, still the owner is entitled to the fair cash market value of the property as it then stood."

That the first part of this charge announces a correct rule of law is not denied, but the latter part of it is thought to be in conflict with the case of *South Park Comrs.* v. *Dunlevy*, 91 Ill. 49, where it is held that in estimating the just compensation to be paid for land condemned for park purposes, the jury should not consider "the possible increase of value thereafter by reason of the prospective park improvements in that vicinity." This instruction in no way conflicts with what is there held. Here the jury were confined to the present value of the property. They were not authorized to consider a possible increase in value on account of prospective improvements. If, by reason of the fact that the drainage canal was to be constructed and work done thereon, the land was, at the date of filing the petition, more valuable than it otherwise would have been, certainly these facts would not deprive the owner of the right to recover the then market value of his property, otherwise he would not receive just compensation for his land. Benefits derived by the owner of land from a public improvement may be offset against damages for land not taken, but never against compensation for that which is taken. The latter part of this instruction practically repeats what is said in the first sentence,—that is to say, the defendant was entitled to the fair cash value, etc., "regardless of the causes that gave it value at that time."

We find no reversible error in this record, and the judgment of the circuit court will be affirmed.

*Judgment affirmed.*