[No. 4199.    Decided October 24, 1902.]

SEATTLE & MONTANA RAILROAD COMPANY, *Appellant*, v. HENRY ROEDER *et al., Respondents.*

EMINENT DOMAIN — CONDEMNATION PROCEEDINGS — RAILROAD RIGHT OF WAY — MARKET VALUE OF LAND — EXPERT WITNESSES — SCOPE OF CROSS-EXAMINATION.

A large discretion is reposed in the trial court in the matter of allowing cross-examination of expert witnesses where market value is involved; and where such witnesses were allowed on direct examination to ,fix the value of a stone quarry condemned for a railroad right of way and the damages resulting from its appropriation, it was not error to permit cross-examination concerning the methods by which the witnesses arrived at their conclusions as to the injury, what elements of damages they had considered, and the reasons for their conclusions.

SAME — SEGREGATION OF LAND — VALUATION ON PARCELS.

In an action to condemn lands for a right of way, it was not error to permit defendant's witnesses to segregate the lands sought to be appropriated and then place valuations upon the different parcels, especially where plaintiff was the first to pursue that course in arriving at a basis of compensation.

SAME — STONE QUARRY — VALUATION BY EXPERT — COMPETENCY OF
WITNESS.

A witness as to the value of a stone quarry and as to how it
should be worked was qualified to testify when it was shown that
he had owned and operated stone quarries, that he knew the
quarry in controversy, had lived in its vicinity for thirteen years,
had examined the property with reference to a purchase thereof,
and was acquainted with its market value.

SAME — EVIDENCE — INCREASED DIFFICULTY OF OPERATION OF QUARRY.

In condemnation proceedings for the appropriation of a rail-
road right of way along a stone quarry, evidence is admissible
for the purpose of showing that the most advantageous way to
work the quarry is by blasting, and that this could not be done
without great care and increased expense by reason of the prox-
imity of the railroad.

SAME — ROYALTIES — ADMISSIBILITY OF LEASE.

In such proceedings a lease of the quarry by the owners is
admissible in evidence for the purpose of showing the royalty
paid by a lessee for the stone, as tending to fix both the value of
the land and of his leasehold interest.

SAME — EVIDENCE AS TO MARKET VALUE.

Evidence that a stone quarry had a market value in the county,
but was probably not saleable there because of the lack of local
purchasers with money enough to pay for it, would not constitute
prejudicial error, where the inquiry was as to the damages suf-
fered by the appropriation of such quarry for railroad right of
way.

SAME — REBUTTAL TESTIMONY.

The refusal to admit rebuttal testimony on the subject of the
location of shale in certain portions of a ledge of stone was not
error where plaintiff had gone into the question in his case in
chief.

ARGUMENT OF COUNSEL — WAIVER BY DEFENDANT — EFFECT.

Where counsel for defendants waive argument on their part
after the opening argument has been made for plaintiffs, it is not
error for the court to refuse to allow further argument on the part
of plaintiffs, under Bal. Code, § 4993, subd. 5, which provides that
"the plaintiff or party having the burden of proof may by himself
or one counsel address the court and jury upon the law and facts
of the case, after which the adverse party may address the court
and jury in like manner by himself and one counsel, or by two
counsel, and be followed by the party or counsel first addressing
the court."

SAME — MEASURE OF DAMAGES.

In condemnation cases the measure of damages is the fair market value of the land taken for railroad right of way at the time of the appropriation, together with the amount of depreciation, if any, in the value of the land not taken, and these respective amounts are to be ascertained without regard to any benefit that may result from the construction of the railroad.

SAME — INSTRUCTIONS.

The refusal of the court to charge as requested that the only elements which the jury should take into consideration as tending to reduce the market value are "those which are appreciable and substantial, and which will actually lessen the market value of the property taken," was not error, where the court, in its own language, correctly stated what elements of damage the jury might consider.

SAME — PRESUMPTION AS TO PRIVILEGE OF CROSSING RIGHT OF WAY.

A requested instruction to the effect that no presumption arises that defendants will be refused the privilege of crossing plaintiff's right of way afoot from one part of defendant's lands to another was properly refused, since the presumption would naturally be the other way.

SAME — PRESUMPTION OF CONTINUANCE OF EXISTING RENTAL VALUE.

A requested instruction that if the jury found the quarry property was held by a lessee they would not be justified in assuming that the amount of rental paid under the lease would continue in the future as the fair rental value was properly refused, since the existing rental value would be presumed to continue until the contrary was shown.

SAME — RELIANCE ON VIEW OF PREMISES.

Where there is a conflict in the testimony, it is not error to charge the jury that they may resort to the evidence of their senses on the view to determine the truth.

SAME — ELEMENTS OF DAMAGE — ELIMINATION BY CONTRACT.

An agreement of a railroad company to construct culverts to carry water across its right of way from one part of defendants' lands to another part where it was needed would not eliminate the possible obstruction of such flow as an element of damage in the appropriation of the right of way, when the agreement does not bind the railroad not to obstruct the flow, nor to carry it across the right of way as convenient for defendants as its natural flow.

SAME — VALUE OF LAND FOR SPECIAL PURPOSE.

Where quarry land is appropriated in condemnation proceedings, the jury are entitled to take into consideration as an element of damage the value of the land with the stone in it, but cannot take into consideration the profits that might be realized on the stone after its removal from the ledge.

SAME — EXCESSIVE DAMAGES.

A verdict for $80,000 for the appropriation of a right of way through a stone quarry will not be disturbed, when there is nothing to indicate passion or prejudice on the part of the jury, and there was testimony on the question of injury to the property ranging from $6,000 to $175,000.

Appeal from Superior Court, Whatcom County.—Hon. JEREMIAH NETERER, Judge. Affirmed.

*Will H. Thompson* and *Kerr & McCord,* for appellant.

*Fairchild & Bruce* and *Newman & Howard,* for respondents.

The opinion of the court was delivered by

MOUNT, J.—On July 23, 1901, the appellant filed its petition in the court below praying for condemnation of a right of way over the land of respondents. On October 21 of the same year, all the parties having appeared in the cause, the court made and entered an order adjudging that the use was a public use, and that there was a necessity therefor, and ordered a jury to determine the compensation to be paid to the respondents for the lands appropriated, and for the damages occasioned by reason of the appropriation. A jury was thereupon impaneled, and the cause proceeded to trial. On November 1 the jury returned a verdict in favor of the respondents Henry Roeder, Victor E. Roeder and wife, and Lottie T. Roth, for $72,000, and in favor of C. I. Roth, a lessee of the property, in the sum of $8,000. Judgment was entered upon the verdict, and from this judgment appeal is prosecuted.

The lands in controversy consist of tide lands and uplands upon which a sandstone quarry, known as the "Chuckanut Quarry," is located. The stone quarry lies on the face of a cliff ranging from 75 to 200 feet in height, and extending for a distance of about 6,000 feet north and south. This cliff faces on Chuckanut bay, an arm of Puget Sound, and the base of the cliff lies along the water front, against which the tide ebbs and flows. The tide lands lie between the face of the cliff and deep water. The ledge of stone known as the "Chuckanut Quarry" lies exposed against the face of this cliff at an angle of about 60 degrees. The right of way sought to be condemned lies near the base of this cliff at the north end, and extends along the same, and across respondents' property. About midway of the quarry the right of way enters upon the quarry, and from that point south appropriates the whole of the ledge. The right of way is 80 feet in width in front of and along the quarry, and at other places is 100 feet in width, and lies between shipping and the quarry. The saw mills, shops, power house, and other buildings used in connection with the quarry are in the right of way, and the construction of the road necessitates their removal. The petition and decree reserved to respondents an easement across appellant's right of way for carrying stone to a dock for shipment, and a location for mills and shops and derricks, and also agrees to carry whatever fresh water flows from the uplands across the right of way. The respondent C. I. Roth had a five-year lease of the quarry property, and was in active operation thereof.

Appellant makes forty-four assignments of error in its brief. The first nine assignments are based upon rulings of the court in permitting cross-examination of appellant's witnesses upon the profits of quarrying the stone, upon

the specific buildings in which the stone has been used, upon the current price of stone from the quarry, upon the possible use of tide lands, upon the cost of fills and the effect of cutting off certain streams of water upon the uplands from the tide lands, upon the amount of stone in the "big blast" and the cost of quarrying the stone elsewhere, upon the value of certain kinds of stone in the quarry fixed with reference to the lease of defendant C. I. Roth, and upon the effect of cutting off the quarry from navigable water.    Whether the cross-examination upon these points was admissible or not depends largely upon the range taken in the direct examination.    To a clear understanding of the questions presented it would be necessary to set out a large part of the examination, both direct and cross, which we do not deem necessary, because definite rules for cross-examination cannot be applied in all cases, and each case must necessarily depend largely upon its own peculiar features.    The trial judge has a large discretion in allowing cross-examination of witnesses where market value is involved, and where expert witnesses are resorted to to establish such value. We shall not, therefore, burden this opinion by setting out the evidence upon which these questions arose.    It is sufficient to say that the witnesses in giving evidence upon direct examination were asked to fix, and did fix, the value of the property condemned, and the damage which, in their opinion the defendant's would suffer by reason of the construction of the appellant's line of railroad.    The questions to which exceptions were taken arose generally when, upon cross-examination, the witness was asked concerning the method by which he had arrived at his conclusion as to the damage, what elements of damage he had considered, and his reasons for his opinion.    No doubt great latitude was given in both the direct and cross-ex-

amination of all the witnesses, but great latitude should be allowed in cases of this character, because the objects of such cross-examination are principally to determine the credibility of the witness, and whether or not the element of damages which he has considered is proper or improper to be considered, and whether he has taken into consideration all the elements of value in arriving at a conclusion. We have gone through the entire evidence, and are satisfied that no reversible error as to these particular questions has occurred.

Errors assigned numbered 10, 14, 15 and 19, are that respondents' witnesses were permitted to place values upon the property in the segregate; that is, upon the stone in the south half of the quarry, and upon the stone in the north half thereof, and upon the value of the upland and upon the value of the tide land. The question presented here will be discussed more fully under the instructions further on in this opinion. We think this was not error. Where different classes of property are taken, it seems that witnesses ought to be allowed to fix a value upon each different class. At any rate, this was the course pursued by the appellant. It was permitted, when making out its case, to introduce evidence as to the value of these several classes of property, and for that reason alone respondents should be permitted to meet the evidence in the same way. *Tacoma Light & Water Co. v. Huson,* 13 Wash. 124 (42 Pac. 536).

Errors 11 and 12 relate to motions to strike out certain evidence of the witness Black, going to the value of the property, and how the same should be worked, because he did not qualify himself to testify. Mr. Black testified that he knew the lands in controversy; had lived in the vicinity thereof for thirteen years; had large real estate holdings; was in the real estate business, and had

sold $200,000 worth in the last two years; had examined the property with reference to purchasing the same; had owned and operated stone quarries, and that he knew the market value of the property. The evidence relating to the manner of working the property went to the damage caused the portion of the quarry not taken because of the proximity of the road to the workings. We think from this examination he was qualified to testify as to the value and to the method of operating the property, and that both motions were properly denied. *Montana Ry. Co. v. Warren,* 137 U. S. 348 (11 Sup. Ct. 96) ; *Chicago & E. R. R. Co. v. Blake,* 116 Ill. 163 (4 N. E. 488) ; *Santa Ana v. Harlin,* 99 Cal. 538 (34 Pac. 224).

The errors complained of numbered 13, 16, 17, 18, 20, 21, 22 and 24 relate to the dangers to the railroad from the operation of the portion of the quarry not taken, to the present market value of the stone, the effect of powder in blasting, the probable future demand for the stone, the manner in which the quarry should be worked to the best advantage, and how much less valuable the quarry left would be after the road was constructed. These objec-- tions were made by the appellant to the introduction of evidence by the respondents. There were two classes of property taken: (1) Tide lands, and (2) the uplands, on which were located the sandstone quarry. The principal value of the uplands consisted in the stone quarry. The line of road ran in a north and south direction nearly parallel to the ledge of the quarry, so that from about the middle of the ledge the southern portion of the ledge was entirely within the right of way, and the north portion thereof was very near the base of the ledge. The location of the road upon a part of the quarry of course confiscated that portion. It is not difficult to understand that the

value of the stone on the land and its accessibility constituted the chief value of the land taken. This value depended largely upon the market value of the stone in the quarry. As to the part not taken the damage would depend largely, if not wholly, upon the extent to which the location of the road would affect its accessibility. If the location of the road was so near the quarry as to injuriously affect the operation thereof so that the stone might not be taken out as cheaply as with the road not there, this would be an element of damage to be considered. For this reason the court properly, we think, permitted evidence on the part of the respondents to show that blasting could not be done without great care and increased expense, by reason of the proximity of the road, and that blasting was the most advantageous way to operate this quarry.

The 23d assignment of error is that the court erred in admitting in evidence the lease executed by the respondents Lottie Roth, Victor Roeder, and Henry Roeder to respondent C. I. Roth. The execution of this lease was conceded by the appellant. It was introduced by the respondents to show the royalty which the lessee was paying for the stone as tending to fix the value of the land and of his leasehold interest. We think it was competent for these purposes. Certainly, the value of the land must depend largely upon the direct revenue which it brings to the owner and lessee. If the lease was a valid lease, it had a tendency to show the value of the property. It was not like evidence tending to show probable rental value. It shows a present fact,—the actual rental value. The good faith of such a lease may be questioned, but it would still be competent to go to the jury and be considered by them, unless they should find it was made for fraudulent pur-

poses, or was unreasonable in the light of all the evidence bearing upon it.

The 24th assignment of error is that the witness Stangroom was permitted to testify that Whatcom county was not a market in which a purchaser for the property could be expected to be found.    The evidence of this witness was to the effect that the property had a market value in that county, but that probably no man was to be found in the county with money enough to pay for it, and that a purchaser would be found somewhere else.    We think the evidence was proper; but, at any rate, its admission would not constitute reversible error.

The 25th and 26th assignments of error relate to the court's refusal to permit certain witnesses to testify in rebuttal to the location of shale in certain portions of the ledge, on the ground that the evidence was not proper rebuttal.    Appellant had gone into this question in his case in chief, and for that reason, the ruling of the court was not error.

When the evidence for both parties was closed, appellant's counsel opened the argument to the jury.    After this counsel had closed his argument, respondents waived argument, whereupon other counsel for appellant demanded the right to further argue the case to the jury.    This the court refused, and upon this ruling the 27th assignment of error is based.    The statute upon this question (§ 4993, Bal. Code, subd. 5), is as follows:

"After the conclusion of the evidence and the filing of request for charge in writing or instructions, the plaintiff or party having the burden of proof may, by himself or one counsel, address the court and jury upon the law and facts of the case, after which the adverse party may address the court and jury in like manner by himself and one counsel, or by two counsel, and be followed by the party or counsel

of the party first addressing the court. No more than two speeches on behalf of plaintiff or defendant shall be allowed."

It is not necessary in this case to decide whether this section of the statute is mandatory or directory. If the statute is mandatory, the court was certainly right, because one counsel only has the right to open the argument for the party having the burden of proof. If the adverse party waives its right to make an argument to the court or jury, there is no one for the opening counsel to follow. If the statute is directory merely, and the court has a discretion to allow counsel for the opening part to again address the jury there is not shown here any abuse of that discretion. The court limited the arguments to three hours on each side. Counsel opening the argument for appellant occupied but thirty minutes of this time, leaving two and one-half hours for the closing argument. It would be manifestly unfair to allow counsel, after respondents had waived their argument under the assumption that the case was closed thereby,—as is and has been the usual practice in the courts of this state,—to reopen the case, and occupy the remainder of the time allowed. This ruling was not error.

The 28th assignment of error is not argued in the briefs, and for that reason we pass it by.

The 29th, 36th, 37th, 38th, 39th and 40th assignments of error relate to instructions requested by appellant and refused by the court. Appellant requested the court to instruct the jury, in effect that, if the location of the road increases the value of the land taken, the railroad company could not be required to pay to the owner the increase of value due solely to the location of the road, and it is argued that the constitution (§ 16, art. 1), provides that compensation, irrespective of any benefits for any improve-

ments proposed, applies only to the lands taken, and does not apply to the damages occasioned to the lands not taken. This question is no longer an open one in this state, and it is, therefore, unnecessary to refer to cases cited from other states. It was first held by this court in *Northern Pacific & P. S. R. R. Co. v. Coleman,* 3 Wash. 228, 234 (28 Pac. 514), that the measure of damages for lands appropriated "is the difference in amount between the value of the tract as a whole, not including therein the increased value, if any, occasioned by the proposed improvements, and the value of the land left, and not including therein such increased value." But this case was expressly overruled in *Enoch v. Spokane Falls, etc., Ry. Co.,* 6 Wash. 393 (33 Pac. 966), and the court there said:

"We think that the true measure of damages in such cases is the fair market value of the land taken at the time of the appropriation, together with the amount of depreciation, if any, in the value of the land not taken, and that these respective amounts should be ascertained irrespective of, that is, without regard to, any benefits that may have resulted from the construction or proposed construction of the railroad."

This rule has been since followed in this court. *Kaufman v. Tacoma, Olympia, etc., R. R. Co.,* 11 Wash. 632, 635 (40 Pac. 137). It was, therefore, not error to refuse the instruction.

Appellant requested the court to give the following instruction:

"In assessing the damages to the market value of the property not taken, you should not take into consideration anything as an element of damages which is remote, or imaginary, or uncertain, or speculative, even though mentioned or testified about by witnesses; but the only elements which you should take into consideration as tending to reduce the market value are those which are appreciable

and substantial, and which will actually lessen the market value of the property taken."

The first part of this instruction down to the word "witnesses" was given by the court in substantially the language requested, but instead of the remaining portion the court said:

"In estimating the damages to the remainder of the property, or that portion of the property described in the petition that is not taken, you should consider the effect, if any, upon the property by the construction of the road, and should award to the respondents such a sum as the evidence in this case convinces you, together with your view of the premises, the market value has depreciated by reason of the construction of the road in the manner as proposed."

And then the court proceeded to correctly state what elements of damage the jury may consider. The latter part of the instruction requested necessarily followed as a conclusion from what was said in the former part; and, where the court subsequently correctly told the jury what elements of damage they might consider in determining the damages to the property not taken, there was a sufficient compliance with the request. For that reason it was not error to refuse the requested instruction.

The 37th assignment of error is that the court refused to instruct the jury, in effect, that no presumption arises that the residents upon the upland of respondents will be refused the privilege of crossing petitioner's right of way to and from the water front and tide lands afoot. It was not error to refuse this instruction. If any presumption at all arises as to such privilege, it is that the appellant will refuse the privilege. *Cedar Rapids, etc., Ry. Co. v. Raymond,* 37 Minn. 204 (33 N. W. 704).

The 38th assignment is based upon the refusal of the court to instruct the jury that, if they found that the

quarry property was held by a lessee, they would not be justified in assuming that the amount of rental paid therefor at this time will continue in the future as the fair rental value.    This instruction was properly refused.    If the rental value was fair and reasonable at the time the lease was made, it will be presumed to continue so until the contrary is found to exist.

The 39th and 40th assignments are based upon refusals of the court to give requested instructions to the effect that the jury would not be permitted to take into consideration any speculative uses of the lands taken or those not taken. The court, as we have already seen, did instruct the jury to that effect.    It also said:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private individuals, and in assessing the value of the land actually taken and the damages to the land not taken, you should not assess the same on the basis of what the owner would take for it, or any part thereof, or what you would take were you the owner of the land, and let the railroad go across as proposed to be located and constructed; these are improper to be taken into consideration, either in fixing the value of the land taken or assessing the damages to the land not taken; but you should at all times keep in mind the actual market cash value of the lands taken and the decrease in market value, if any, of the lands and property not taken.    .    .    . You are further instructed that the defendants in this case are entitled to the fair cash market value on the 23d day of July, 1901, of the real estate taken, regardless of the causes which gave such real estate its value."

The errors assigned as 30, 31, 32, 34, 35 and 44 relate to instructions given by the court.    The court instructed the jury, in substance, that the recovery in this case was limited to the actual cash value of the lands taken, plus the damage to the lands not taken, irrespective of any benefit,

from the proposed improvements.    We have already considered this question under the instruction requested by appellant upon the same subject in error alleged as numbered 29, *supra*.    It is unnecessary to discuss it further here.    If it was not error to refuse the requested instruction it was not error to give this instruction, because this is the reverse of the one requested.

The jury, by consent of both parties, were permitted to view the premises, and the court instructed the jury as follows:

"You have been permitted, gentlemen of the jury, under direction of the court, to view the premises sought to be condemned in this case, and also the lands of the respondents which they claim will be injured by reason of the taking of the land sought.    You are impaneled for the purpose of estimating the damages which the petitioner must pay to the respondents for the taking and injuriously affecting their property.    In cases of this kind, no certain amount can be mathematically fixed as the amount of the damages which should be awarded.    You must, therefore, trust somewhat to your own judgment in arriving at this definite amount, and one of the objects and purposes of the view which you have made is to enable you to use your own senses and judgment by obtaining such information as an eye-witness can gain of the general quality and condition of the land, the uses to which it has been put, or to which it is applicable, the manner in which the taking of a part of the tract would affect the residue, the location of the road, and better to understand and apply the evidence of the witnesses who have testified before you.    As to these matters, you must remember, as part of the evidence in this case, what you witnessed in viewing the premises, and you have the right, and it is your duty, to use your senses; and if any witness has testified to anything which you know, by the evidence of your own senses on the view, is false, you would not be bound to believe, and, indeed, you could not believe, the witness, and you may disregard his

testimony, although no other witness has testified on the stand as the jury knows it to be; and if, in your judgment, the evidence is conflicting as to the value of the property taken and the injury to the balance, you should resort to the knowledge gained upon your view as bearing upon the weight to be given to the various and conflicting statements and estimates."

When instructing upon the credibility of witnesses, after enumerating what the jury may consider in determining the weight to be given to the statements of witnesses, the court said:

"It is your duty to harmonize the testimony of all the witnesses, if possible, so as to impute perjury to no witness.   If this can be done consistent with the truth, you should do so.   But if you find it impossible to harmonize the testimony, and if you find further from the evidence of your senses on the view or from the testimony on the stand, that any witness who has testified before you has wilfully testified false concerning any material fact in the case, you will then have a right to disregard his entire testimony, except in so far as you may find it corroborated by other credible evidence or other facts or circumstances proved upon the trial."

It is to this last instruction that exception is taken upon the ground that the instruction assumed that the judgment formed by the jury from the view of the premises is infallible.   The jury, by these instructions, are not told that they may assess the damages to the property according to their notion as obtained by a view of the premises without regard to the evidence of witnesses.   Such a rule cannot obtain.   But they are told that, where there is conflict in the testimony, they may resort to the evidence of their senses on the view to determine the truth, and this, we think, is correct.   The rule is well stated in *Washburn v. Milwaukee, etc., R. R. Co.,* 59 Wis. 364 (18 N. W. 328), where it is said:

"We understand that the object of a view is to acquaint the jury with the physical situation, condition, and surroundings of the thing viewed.    What they see they know absolutely.    If a witness testify to anything which they know by the evidence of their senses on the view is false, they are not bound to believe, indeed cannot believe, the witness, and they may disregard his testimony, although no other witness has testified on the stand to the fact as the jury know it to be. · For example, if a witness testify that a certain farm is hilly and rugged, when the view has disclosed to the jury and to every juror alike that it is level and smooth, or if a witness testify that a given building was burned before the view, and the view discloses that it had not been burned, no contrary testimony of witnesses on the stand is required to authorize the jury to find the fact as it is, in disregard of testimony given in court."

The instruction excepted to has reference to conflicting testimony, and is certainly within the rule that the jury in such cases may make use of the knowledge disclosed by the view to determine the truth.    The instruction excepted to was not error.

The court instructed the jury as follows:

"As you have been before instructed, where property is taken for public purposes the owner is entitled to its fair market cash value for the uses to which it may be most advantageously applied, for which it would sell for the highest price in the market; and if you should find from the evidence in this case that portions of the land taken border on the shores of Chuckanut bay, and that the lands immediately in front thereof are available for manufacturing purposes of any kind, and that, in order to utilize, lease, or sell them for such purposes, it would be necessary to have fresh water; that on other portions of the land not taken there is fresh water sufficient for the purpose; and that the construction of this road will interfere with the bringing of the water over the right of way,—this is an element that you would have a right to consider in estimating

the damages sustained.    In this connection you should also take into consideration the fact that the railway company has stipulated in this case and agreed to construct culverts upon its right of way, under its track, for the transmission of water from all springs now upon the uplands not taken, and that the railway company would be bound by such stipulation to construct its road in such manner as to permit the flow of the water from such springs across its right of way."

This instruction is objected to upon the ground that, under the agreement named, this element of damage should have been eliminated from the consideration of the jury. There is nothing in the stipulation nor in the record to show that the railroad company was bound not to obstruct the flow of any such water, or to carry it across the right of way at any particular place or places as convenient to the respondents as the same naturally flows.    But the stipulation agrees merely to construct culverts to carry the water across the right of way.    This may or may not leave an element of damage, according to the manner and the place at which the water is carried across the right of way, and whether it may or may not be obstructed in its flow. We think, under the stipulation and under the facts in dispute in this case, a question of fact remained, which should have been submitted to the jury.    The instruction was a fair statement of the law, and was not error.

The court instructed the jury as follows:

"In this case, if you should find that land taken contains building stone, you are instructed that the measure of compensation is the fair market value of the land taken with the building stone in it, and the profits or the price or value of such building stone, if the same or any part thereof will be taken by the proposed right of way, should not be considered by you as building stone in arriving at your verdict.    The number of tons of building stone that could

be gotten from the land, and the value per ton thereof, or the royalties thereon, are not to be considered except as they may guide you in fixing the value of the lands taken or injury to quarry lands; and as a special rule for your guidance in arriving at the value of any portion of the quarry which you may find from the evidence will be taken, and of the amount of damages to any portion of the quarry not taken, I instruct you that the compensation to be awarded by you to the owners is to be estimated by a reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the near future."

It is insisted that this instruction is error, because it allows the jury to take into consideration the number of tons of building stone that could be taken from the land, and the value per ton thereof, and the royalties thereon, as a guide in fixing the value of the land taken.    Here is a limestone quarry in active operation, convenient, accessible to water transportation, where the stone was exposed on the face of the cliff, and easily, readily, and cheaply taken out. The lands were useful principally for the stone lying thereon.    The right of way appropriated one-half of this ledge of stone, and ran between the other half and water transportation.    The authorities agree that, where land taken contains mineral, the measure of compensation is the sum that would be given for the land with the mineral in it. But any inquiry as to the profits or the price or the value of the minerals, if the minerals themselves have been taken out, will not be permitted.    10 Am. & Eng. Enc. Law (2d ed.), p. 1158; 6 Am. & Eng. Enc. Law, p. 560; *Sanitary District of Chicago v. Loughran,* 160 Ill. 362 (43 N. E. 359); *Searle v. Lackawanna & B. R. R. Co.,* 33 Pa. St. 57; *Port v. Huntington, etc., R. R. Co.,* 168 Pa. St. 19 (31 Atl. 950).

This land has a special value as stone-producing land. The owners, therefore, are entitled to compensation according to its value as such. *Sanitary District v. Loughran, supra.* It is like lands with buildings thereon, or timber land, or lands having any other commodity which is a part of the land itself. It is not like annual crops, the profits of which are necessarily uncertain. While the profits or price or value of the minerals, if the minerals themselves are taken out, may not be considered, yet the value and extent and quality of the stone, or the buildings, or the timber, as the case may be, as it exists upon the land may be considered. Lewis, Eminent Domain, § 486. If the extent and quality and value of the stone as it lies on the land may not be considered, there would be no way by which the value of the land with the stone could be shown. All legitimate evidence tending to establish the value of the land with the mineral in it is permissible. The jury were not authorized by this instruction to fix the value of the stone apart from the land, but were instructed that they might consider the quantity of stone that could be gotten from the land, and the value thereof, or royalty thereon, *"as a guide in arriving at the value of the land."* If a piece of land taken contains valuable improvements, those improvements apart from the lands may not be considered; yet certainly the character, nature, and extent of the improvements, and the revenue derived therefrom, are as essential to be considered in arriving at the value of the land as the land itself or the uses to which it may be put.

In *Boom Co. v. Patterson,* 98 U. S. 403, the court said:

"So many and varied are the circumstances to be taken into account in determining the value of property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully

guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future."

In *Dupuis v. Chicago & N. W. Ry. Co.,* 115 Ill. 97 (3 N. E. 720), the court said:

"The petitioner's fifth instruction in substance directed the jury that they should not take into consideration any profits, or supposed profits, realized from the business carried on upon such lands or lots, or the probable character of such business or profits in the future. Such profits are not proper elements in ascertaining the damages to which the defendants are entitled in this proceeding. This instruction was, in our opinion, calculated to mislead the jury. It may be true that the profits or supposed profits arising from the business was not a proper element of damages, as declared in the instruction, but it will. be observed that the instruction does not stop with profits or supposed profits, but goes further, and informs the jury that they should not take into consideration the character of the business transacted on the property. As said before, the main inquiry was the fair market value of the property to be taken, but in arriving at a solution of this question it was proper for the jury to consider the purposes for which the lands were used,—whether they were adapted to that particular use, whether the lands were profitable and valuable for that use; and in so far as the particular use to which the lands were or had been appropriated added to their market value, that might be considered by the jury. If the lands were valuable, as located, bordering on or near the river, as it is contended they were, for a saw-mill, planing-mill, or factory of any description, or for any other purpose, the testimony tending to prove such purpose was proper for the consideration of the jury, in passing upon the fair market value of the property taken or damaged."

See, also, *Alloway v. Nashville,* 88 Tenn. 510 (13 S. W.

123, 8 L. R. A. 123). If the jury are entitled to take into consideration the uses for which the property is suitable, they certainly have the right to consider whether the property is adapted to the particular uses claimed for it, and whether it is or is not profitable and valuable for such uses. Whether property is profitable and valuable for a particular use is always a controlling consideration in determining the value of the property itself. It follows that the quantity of stone that could be gotten from the land, and the value thereof, or the royalty thereon, are proper to be considered by the jury as a guide in determining the market value of the land.

It is also assigned that the verdict is against the law and evidence, and grossly excessive. The verdict seems large, but the property also appears valuable. We have gone over the whole record, which is somewhat extensive itself, and have concluded that the law was fairly given in the case. While a large range was taken in the examination and cross-examination of witnesses, and while the witnesses differed widely in their estimates of the value of the property taken and the damage to that not taken,—some placing the damage to the entire property as high as $175,-000, others estimating it as low as $6,000,—there is nothing in the record to indicate any prejudice or passion as influencing the jury. We do not feel disposed to substitute our own judgment for that of the jury whose duty it is to assess the damage, simply because the amount may seem to us large; especially where there is abundant competent evidence upon which to base the verdict.

Finding no reversible error in the record, the judgment will be affirmed..

REAVIS, C. J., and DUNBAR and ANDERS, JJ., concur.