## THE BOARD OF TRADE TELEGRAPH COMPANY

*v.*

## R. M. DARST.

*Opinion filed October 24, 1901.*

1. EMINENT DOMAIN—*it is proper to show that value of farm was lessened by construction of telegraph line.* In proceedings to condemn a strip of land for a telegraph line it is proper for the defendant to prove that his farm was lessened in value by the construction of the telegraph line through it, although along the public highway, in which he owned only the fee subject to the public easement.

2. SAME—*elements of damage to land not taken.* On the question of damages to land not actually taken for a telegraph line, the defendant may prove the nearness of the poles and structures to his residence and the unsightliness thereof, that it would be more work to cut weeds and grass around the poles and would render the use of the farm inconvenient or dangerous; but the mere possibility that animals might be injured by crowding between the poles and fence would furnish no ground for assessment of damages.

3. SAME—*what element of damage is too speculative.* It is proper to prove, in condemnation, that the location of the telegraph line rendered it necessary for the defendant to build a board fence for the protection of his stock, but it is error to permit him to prove what it would cost to renew such a fence every ten years for a hundred years.

APPEAL from the County Court of McLean county; the Hon. R. A. RUSSELL, Judge, presiding.

LOESCH BROS. & HOWELL, (YOUNG & POTTER, of counsel,) for appellant.

HARVEY HART, for appellee.

Mr. JUSTICE CARTER delivered the opinion of the court:

The appellant filed its petition in the court below against the appellee to condemn a right of way for its telegraph line over so much of a strip six feet in width of one side of a public highway as should be necessary for its poles and wires. The highway was called "White Oak road," and passes through appellee's farm, the title to which strip belonged to appellee in fee, subject to the

easement in the public.  The farm contained 126 acres, and was of the value of about $125 per acre.  It was divided by the White Oak road and also by the Lake Erie and Western railroad.  There were twenty-six poles and four braces placed on the public road through appellee's land, besides cross-beams and wires.  The poles were one foot in diameter, and were set in the ground five feet and extended above the ground twenty feet.  Their location on the public highway, (indicated by dots,) and the location of the railroad with reference to appellee's land and his residence thereon, are shown by the following plat:

The appellee filed a cross-petition, claiming damages also to his land not taken.  Upon the second trial the jury assessed appellee's damages for land taken at $35 and to land not taken at $300.  Appellee remitted $34 of the damages for land taken and judgment was rendered on the verdict for the balance.  This appeal was then taken by the telegraph company.

About the same number of witnesses testified on behalf of each party, those for the petitioner to the effect

that appellee's land was not diminished in value by the construction of the telegraph line along the public highway, and those for appellee that the farm was diminished in value from $300 to $500. The appellee, on his own behalf, testified that the land taken was worth $35 and that the land not taken was damaged or diminished in value $500, but as he remitted all of the $35 as assessed by the jury for land taken, except for one dollar, only the amount of the damages assessed for injury to land not taken is now in controversy.

The grounds stated by appellee and other witnesses in his behalf upon which they estimated the damages to land not taken, were, that one of the poles was located in front of his house, about two hundred feet away, on the opposite side of the public highway, near his gate, and others at intervals of one hundred and fifty feet; that they were unsightly; that he bought and occupied the farm for a home and that it was damaged by the unsightliness of the poles; that by reason of the location of the poles it required more labor to keep the road clear of weeds, by making it necessary to use a scythe instead of a mower; also, that it rendered that part of the highway passing through his premises inconvenient and dangerous for his use in using the place as a stock farm, the poles having been set so near the barb-wire fence that cattle and other animals would crowd between and be injured; that he would for that reason be compelled to put in and maintain a board fence instead of a wire fence, at an increased cost of $39 every ten years for the sixty rods. On the theory that such fence would have to be renewed every ten years for one hundred years he estimated this element of his damages at $390. It is plain, we think, that such an estimate was based upon mere theory, and upon suppositions entirely too remote and speculative to constitute any proper basis for a verdict or judgment. It was certainly proper for appellee to prove that his farm was lessened in value by the con-

struction of the telegraph line through it, although along the public highway, in which he owned only the fee subject to the public easement. We have no doubt, as a proper element of damage it was competent to prove the nearness to his residence and the unsightliness of the poles or structure; that it would require more labor and expense in cutting weeds and grass around these poles on his premises, and would render the use of the farm inconvenient or dangerous; but the mere possibility that injuries might be caused would furnish no ground for the assessment of damages. As said in *Jones* v. *Chicago and Iowa Railroad Co.* 68 Ill. 380: "Investigations like this necessarily embrace a wide range of subjects, and it is hardly practicable to state any inflexible rule for estimating the damages to the land owner. The amount allowed should be sufficient to cover all the actual damage occasioned by reason of the construction of the road, for the land taken, for all physical injuries to the residue, and for all inconveniences of every character actually produced, but nothing should be allowed for imaginary or speculative damages, or such remote or inappreciable damages as the imagination may conjure up and which may or may not occur in all the future."

We think it was proper to prove that in locating the line as it was it became necessary for the appellee to build a board fence for the protection of his stock, but it was clearly too remote and speculative, and therefore error, to prove what it would cost to renew such fence every ten years for an hundred years. The appellant, by changing the location of its poles within the right of way, might obviate the danger apprehended and make such cost wholly unnecessary, or for other causes such renewals might never be made or become necessary. Moreover, the question was what was the damage to the land, and not what should be allowed to appellee for future fencing. Nothing could be allowed, under the cross-petition, for fencing, as such, and proof of the necessity

of such fencing, and of its cost, would be proper only as a means of showing the depreciation of the value of the land by reason of the taking and use of parts of it by appellant. Lewis on Eminent Domain, sec. 498.

We are satisfied, also, aside from this error in the admission of testimony, that it was error to overrule appellant's motion for a new trial on the ground that the damages were excessive. There is no sufficient evidence to support a verdict assessing $300 as damages, under the cross-petition, to the land not taken. The poles were all located in the public highway, and it is apparent from the evidence that a much less sum would have fully compensated the appellee. The law allows just compensation only.

The judgment is reversed and the cause remanded.

*Reversed and remanded.*