[No. 14942.   *En Banc.*   June 4, 1919.]

# HAM, YEARSLEY & RYRIE, *Respondent*, v. NORTHERN PACIFIC RAILWAY COMPANY *et al., Appellants.*[1]

EMINENT DOMAIN (84) — COMPENSATION — MARKET VALUE. The fair and reasonable market value at the time of the trial is the basis for compensation in condemnation proceedings.

SAME (84). The market value is the price it will bring when offered for sale by one who desires but is not obliged to sell, and is bought by one under no necessity of buying.

SAME (80, 126, 136)—COMPENSATION—VALUE FOR SPECIAL USE— EVIDENCE—INSTRUCTIONS. In condemnation of property for a dam site which is improved by a dam impounding waters for irrigation, it is proper to show its condition, the uses to which it has been applied, and its availability and capacity for other uses, and whatever the improvements may add to its fair market value for all purposes, so that it is error to instruct that its value as a dam site cannot be considered; but the fact that it is needed for the particular object sought by the condemnation is not an element of the value.

SAME (78)—COMPENSATION—IMPROVEMENTS. In eminent domain proceedings, owners of a dam site impounding the waters of a lake, who, without any right to the waters, built a dam and storage works pending litigation over the right to the waters, acted at their peril and are not entitled to recover the cost price of their improvements as part of their damages, but are limited to the market value of their property, including whatever the improvements may add to its fair market value for any and all purposes at the time of the trial.

COSTS (45)—WITNESSES' FEES. It is an abuse of discretion to refuse to tax costs for witnesses who were present and competent to testify although, because of the manner in which the case was tried, they were not called upon to testify.

MOUNT, MAIN, and FULLERTON, JJ., dissent.

Appeal by defendants from a judgment of the superior court for Grant county, Hill, J., entered February 26, 1918, awarding damages in condemnation proceedings, after a trial to the court and a jury. Reversed.

[1]Reported in 181 Pac. 898.

*Cannon & Ferris* and *Williamson & Luhman,* for appellants.

*Voorhees & Canfield* and *Merritt, Lantry & Merritt,* for respondent.

HOLCOMB, C. J.—The chief question in this case is the proper measure of compensation and damages in a condemnation proceeding.

On September 9, 1913, judgment was entered in the superior court for Grant county whereby 16 and 2/10 acres of land on Moses Lake, in that county, were decreed subject to appropriation for a public use by the respondent, subject to the right of the respondent to acquire the same by condemnation, for the construction and maintenance of a dam site. That judgment was entered by direction of this court, culminating protracted litigation. See *State ex rel. Ham, Yearsley & Ryrie v. Superior Court,* 70 Wash. 442, 126 Pac. 945; *State ex rel. Grant Realty Co. v. Superior Court,* 76 Wash. 376, 136 Pac. 144; *State ex rel. Ham, Yearsley & Ryrie v. Superior Court,* 81 Wash. 690, 143 Pac. 310, and *Grant Realty Co. v. Ham, Yearsley & Ryrie,* 96 Wash. 616, 165 Pac. 495. Four years later, after the termination of the above mentioned litigation, a trial of the condemnation proceeding before the court, sitting with a jury, resulted in the assessment of damages in the sum of $85. Motion for a new trial upon the ground that the verdict was inadequate, and for error of law at the trial and for other reasons set forth in the motion was denied and verdict entered upon the judgment.

The principal errors assigned by the appellants are:

(1) The court erred in rejecting appellants' offer of testimony that "the land described in the petition and sought to be condemned by the petitioner for a

dam site is, by reason of its surroundings and natural advantages, peculiarly adapted for a dam site.''

(2)   The court erred in rejecting appellants' offer of testimony that the ''fair market value of the land sought to be condemned, taking into consideration all of the uses to which the land is adaptable, including that of a dam site, is from forty to sixty thousand dollars.''

(3)   The court erred in rejecting appellants' offer of testimony that a fair market value of the land sought to be condemned, with improvements located thereupon, is approximately the sum of forty-five thousand dollars.

(4)   The court erred in rejecting appellants' offer of testimony as follows: that the defendant companies, subsequent to the date of the filing of notice of appropriation of the waters in Moses Lake by the petitioner, filed upon Moses Lake, in conformity with the laws of the state of Washington relative thereto, notice of appropriation of the waters of said lake for use both by storage and by diversion; that, pursuant to said notice of appropriation, and in due compliance with the law relative thereto, the defendants diligently and continuously prosecuted to completion the necessary works for the impounding and diversion of 48,000 acre feet of the waters of said lake by the construction of a dam upon the property sought to be condemned; that, by virtue of said dam which was constructed and is now upon the land sought to be condemned, the defendants have stored, are now storing, and in possession of approximately 48,000 acre feet of the waters which would otherwise have gone to waste; that they are the owners of 38,000 acres of irrigable land adjacent to and irrigable from the said Moses Lake with the waters so impounded in said lake; that

works have been constructed and completed for the irrigation of approximately 3,200 acres of said body of land, of which there is already reclaimed and being irrigated a considerable portion; that the petitioner proposes to immediately destroy the dam heretofore referred to as now existing on the property sought to be condemned, thereby taking of said dam site and injuriously affecting other property of the defendants, to wit, the said 48,000 feet of water now stored and impounded in said reservoir, and that a reasonable value of the property thus deprived of the defendants is the sum of $114,000.

(5) The court erred in rejecting appellants' offer of testimony that "the dam upon said property sought to be condemned cost the sum of $17,500, is in good condition and is serviceable."

(6) The court erred in rejecting appellants' offer of testimony "that the dam is in good condition, has not depreciated in value, and cannot be reproduced for a considerably larger sum."

Assignments numbered seven to eleven, inclusive, are that the court erred in giving instructions numbered 2, 3, 6, 7, 8.

Assignment twelve is that the court erred in refusing appellants' motion for a new trial.

Assignment thirteen is that the court erred in granting respondent's motion to retax costs.

Appellants state their proposition contended for on this appeal succinctly in their reply brief as follows:

(1) In a condemnation proceeding, can the owner show the value of his land for all purposes for which it is naturally adapted?

(2) In a condemnation proceeding, can an owner show market value of the land with the improvements existing at the time of trial?

(3)  In a condemnation proceeding, can an owner show damage to other property injuriously affected by the taking of the specific property condemned?

(4)  In a condemnation proceeding, is an owner entitled to witness fees for witnesses produced by him to testify to market value of his premises?

Appellants insist that this court must answer each of these questions in the affirmative, but that the lower court answered each of them positively in the negative.

All of these questions must be answered, abstractly, in the affirmative, and it remains only to be seen, concretely, whether, or to what extent, they were answered in the negative by the court below.

The respondent stated in its brief that the site contended for is the only practicable dam site for impounding the waters of the lake. Respondents contend, however, that appellants only offer, in connection with their offers to prove the value of the land and damages, was to prove the value of the land *in connection with the waters of Moses Lake*. The offer as shown in assignment of error number two and by the statement of facts is not such an offer; that offer was a clear and unequivocal offer to show that the fair market value of the land sought to be condemned, taking into consideration all the uses to which the land is adapted, including a dam site, is from $40,000 to $60,000, and the offer shown in assignment number three was that "the fair market value of the land sought to be condemned, with the improvements located thereon, is approximately the sum of $45,000."

The court instructed the jury (Instruction No. 4) that they were to "assess and allow to defendants for said land its fair and reasonable market value at the time of this trial, based on the evidence given in the case and upon your view thereof, and in conformity with all the instructions given you by the court." In

instruction number five the jury were instructed that the "market value as given in the instructions is the price which said real estate will bring when it is offered for sale by one who desires but is not obliged to sell it, and is bought by one who is under no necessity of having it." Instruction number six was that "in estimating the value of the real estate you may consider all of its capabilities and all of the uses to which it is applied, and for which it is adapted, but you shall not consider the fact, if you find such fact to be, of the unwillingness of the owner to sell or dispose of said property."

These instructions were all correct and in accord with our decisions and the almost universal decisions upon this question; but the court further instructed the jury (Instruction 7) that, in ascertaining the value of damage, they "must not take into consideration any special value which said property may have to the petitioner by reason of its necessity, but the market value as hereinbefore defined to you"; "*Nor should you take into consideration the value of defendants' property as a dam site.*" The court further instructed the jury that "the waters of Moses Lake, in front of the defendants' lands which are sought to be condemned in this proceeding, are navigable waters within the law, and the right to impound, store and use them is owned by the petitioner, and the defendants, by reason of the ownership of said lands abutting on said lake, would have no proprietary rights in any dam site upon which to construct a dam for the purpose of impounding and storing the waters of said Moses Lake, and would not be entitled to have the value of such dam site considered in estimating the value of the lands, as they have no interest in and to the waters of Moses Lake or any right to impound and store the same." In instruction number seven the respondent

insists that the trial court adhered to the rule which held to the market value for all purposes, and clearly, specially and unmistakably told the jury that, in their determination of the value of the land, they could·consider its adaptability for a dam site. This is certainly not correct when we find in the instruction that the court told the jury they were not to take into consideration the value of the land for a dam site.

This court has always adhered to the rule that the market value at the time of trial is the basis of compensation in condemnation proceedings: *Seattle & M. R. Co. v. Murphine,* 4 Wash. 448, 30 Pac. 720; *Seattle & M. R. Co. v. Roeder,* 30 Wash. 244, 70 Pac. 498, 94 Am. St. 864; *In re Westlake Avenue,* 40 Wash. 144, 82 Pac. 279; *Grays Harbor & P. S. R. Co. v. Kauppinen,* 53 Wash. 238, 101 Pac. 835; *Columbia & Cowlitz River Boom & Rafting Co. v. Hutchinson,* 56 Wash. 323, 105 Pac. 636; *Distler v. Grays Harbor & Puget Sound R. Co.,* 76 Wash. 391, 136 Pac. 364; *Tacoma v. Nisqually Power Co.,* 57 Wash. 420, 107 Pac. 199; *Seattle, Port Angeles & Lake Crescent R. Co. v. Land,* 81 Wash. 206, 142 Pac. 680; *King County v. Seattle Cedar Lumber Mfg. Co.,* 94 Wash. 84, 162 Pac. 27, L. R. A. 1917C 1184.

Lewis on Eminent Domain (2d ed.), vol. 2, § 479, lays down the rule as follows:

"Value for Particular Uses.—The market value of property includes its value for any use to which it may be put. If, by reason of its surroundings, or its natural advantages, or its artificial improvements, or its intrinsic character, it is peculiarly adapted to some particular use, all the circumstances which make up this adaptability may be shown, and the fact of such adaptation may be taken into consideration in estimating the compensation. Some of the cases hold that its value for a particular use may be proved, but the proper inquiry is, what is its market value in view of any use to which it may be applied and of all the uses in view to which it is adapted?"

In *Boom Co. v. Patterson,* 98 U. S. 403, the United States supreme court say:

"In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be, what is the property worth in the market, viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted, that is to say, what is it worth from its availability for valuable uses. Property is not to be deemed worthless because the owner allows it to go to waste, or to be regarded as valueless because he is unable to put it to any use. Others may be able to use it, and make it subserve the necessities or conveniences of life. Its capability of being made thus available gives it a market value which can readily be estimated.

"So many and varied are the circumstances to be taken into account in determining the value of the property condemned for public purposes, that it is perhaps impossible to formulate a rule to govern its appraisement in all cases. Exceptional circumstances will modify the most carefully guarded rule; but, as a general thing, we should say that the compensation to the owner is to be estimated by reference to the uses for which the property is suitable, having regard to the existing business or wants of the community, or such as may be reasonably expected in the immediate future.

"The position of the three islands in the Mississippi, fitting them to form, in connection with the west bank of the river, a boom of immense dimensions, capable of holding in safety over twenty millions of feet of logs, added largely to the value of the lands. The boom company would greatly prefer them to more valuable agricultural lands, or to lands situated elsewhere on the river; as, by utilizing them in the manner proposed, they would save heavy expenditures of money in constructing a boom of equal capacity. Their adaptability for boom purposes was a circumstance,

therefore, which the owner had a right to insist upon as an element in estimating the value of the land.''

Lewis on Eminent Domain (3d ed.), vol. 2, § 707, says:

''So it is proper to show that property possesses a peculiar value for railroad purposes, for dock purposes, for a mill site, for a ferry, for market gardening, for raising cranberries, for warehouse purposes, or for a bridge site.''

In 10 R. C. L. § 114, page 131, the rule is stated as follows:

''Value for Special Use.—While market value is always the ultimate test, it occasionally happens that the property taken is of a class not commonly bought and sold, as a church, or a college, or a cemetery, or the fee of a public street, or some other piece of property which may have an actual value to the owner, but which under ordinary conditions he would be unable to sell for an amount even approximating its real value. As market value presupposes a willing buyer, the usual test breaks down in such a case, and hence it is sometimes said that such property has no market value. In one sense this is true; but it is certain that for that reason it cannot be taken for nothing. From the necessity of the case the value must be arrived at from the opinions of well informed persons, based upon the purposes for which the property is suitable. This is not taking the 'value in use' to the owner as contradistinguished from the market value. What is done is merely to take into consideration the purposes for which the property is suitable as a means of ascertaining what reasonable purchasers would in all probability be willing to give for it, which in a general sense may be said to be the market value.

''Value from Expected Public Use: The value of the land taken to the party taking it is not the test of what should be paid, nor should the fact that the land is desired or needed for a particular public use be considered when it is taken for that use. If, however, entirely apart from the fact that the property was taken

for a particular use, it appears that it was exceptionally adapted and available for such a use, as for example, for a municipal water supply, or for a railroad, or for a bridge, and the necessity for such use was so imminent as to add something to the present value in the minds of possible buyers, that element may be considered in determining the fair market value."

In 41 L. R.A. (N. S.) at page 838, it is said:

"It [value] includes every element of usefulness and advantage in the property. If it be useful for agricultural or for residence purposes, if it has adaptability for a reservoir site or for the operation of machinery, if it contains a quarry of stone or a mine of precious metals, if it possesses advantage of location or availability for any useful purpose whatever, all these belong to the owner, and are to be considered in estimating its value. It matters not that the owner uses the property for the least valuable of all the ends to which it is adapted, or that he puts it to no profitable use at all. All its capabilities are his, and must be taken into the estimate.

"This does not mean that all the capabilities are to be priced separately and the aggregate put down as the true value, for they do not exist independently of each other, and cannot all be realized at the same time; nor will it do to restrict the estimate to any one of them, because in one view that would exclude the other elements altogether, and in another view it would tend to make the degree of benefit to the party appropriating and condemning for a particular purpose the real measure of value, which is never allowable." *Southern R. Co. v. Memphis,* 126 Tenn. 294, 148 S. W. 662, 41 L. R. A. (N. S.) 828, 838.

Lewis on Eminent Domain (2d ed.), vol. 2, at page 1056, says:

"The conclusion from the authorities and reason of the matter seems to be that witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted.

The condition of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value the owner is entitled to the benefit of it. But, when all the facts and circumstances have been shown, the question at last is, what is it worth in the market.''

See, also, *Currie v. Waverly & N. Y. B. R. Co.*, 52 N. J. L. 381, 20 Atl. 56, 19 Am. St. 452.

His Honor, the trial judge, adopted the theory of the respondent that the rule announced in *Grays Harbor Boom Co. v. Lownsdale*, 54 Wash. 83, 102 Pac. 1041, 104 Pac. 267, applies to this case and framed his instruction in conformity with the instruction given in that case. We later pointed out, however, in *Columbia & Cowlitz River Boom & Rafting Co. v. Hutchinson*, 56 Wash. 323, 105 Pac. 636, that in the *Lownsdale* case the claimant against whom the condemnation was instituted was not the owner of the shore land with the accompanying littoral and riparian rights, and there was not sought to be appropriated any part of the upland further than for a right of way with possible consequent erosion caused by the use of the shore land and upland, and that in a case where, as in the *Hutchinson* case, the respondents were the owners of the shore land as well as the upland and the appurtenant littoral and riparian rights that attach to such lands in this state, and where for the successful operation of the boom it was necessary to use a part of the upland, that the availability of the land as a boom site should be taken into consideration, and in that case such availability was taken into consideration and approved by this court. In a note by the editor to the case of *McGovern v. New York*, 46 L. R. A. (N. S.) 391, at page 393, it is pointed out that the *Grays Harbor*

*Boom Co. v. Lownsdale* case, *supra,* does not depart from the general rule heretofore stated. The case was analyzed and it was pointed out that the owner of the land there involved, which abutted on the river and shore, had no proprietary right in any boom site, and hence was not entitled to have its value for a boom site considered in estimating the value of the land. That the court does not intend, by its decision, to hold that the owner of land which was available for the purpose for which it was sought to be condemned was not entitled to have its value for that purpose considered as an element to establish the market value, is made clear by a later decision wherein an instruction to the jury was sustained to the effect that the jury, in making up their verdict, should take into consideration the value of the land as a boom site, although it was being condemned to be used for that purpose; citing *Columbia & Cowlitz River Boom & Rafting Co. v. Hutchinson,* 56 Wash. 323, 105 Pac. 636. The distinction between the cases as here made was pointed out by the editor in the foregoing note. It is true that the owner is not permitted to take advantage of the necessities of the condemning party, but neither can the condemner obtain something of value for nothing. Under the rule fixing the market value at the time of taking, obtaining in this state, and in determining that value, it is proper to show the condition of the property, its surroundings, the uses to which it has been applied, and its capacity for other uses, including that to which it is sought to be applied, in estimating its value, but no showing may be made of its value for any special use; the value of the use for which it is sought may be more or less than its market value. *Black River & M. R. Co. v. Barnard,* 9 Hun (N. Y.) 104; *Oregon R. & Nav. Co. v. Taffe,* 67 Ore. 102, 134 Pac. 1024, 135 Pac. 332, 515.

A proper theory for the trial court to proceed upon and admit and reject evidence and instruct the jury is the rule as stated in *Brack v. Mayor etc. of Baltimore,* 125 Md. 378, 93 Atl. 984, Ann. Cas. 1916 E 880, as follows:

"The rule is that the market value of the land is to be estimated with reference to the uses and purposes for which it is adapted, and that any special features which may enhance its marketability may properly be considered. But the fact that the land is needed for the particular object sought by the condemnation is not to be regarded as an element of the value to be ascertained. The question is not what the property is worth to the condemning party, but what could probably be realized from its sale to any purchaser who might desire it for any or all of the purposes for which it is available."

See, also, 15 Cyc. 757; *Sargent v. Town of Merrimac,* 196 Mass. 171, 81 Atl. 970, 124 Am. St. 528, 11 L. R. A. (N. S.) 996; *Board of Trade Tel. Co. v. Darst,* 192 Ill. 47, 61 N. E. 398, 85 Am. St. 288, 291, note.

We are, therefore, of the opinion that the trial court was in error in rejecting appellants' offers under assignments 1, 2 and 3, and in instructing the jury as in instruction number seven.

We are of the opinion, however, that the court properly rejected the offers stated in assignments number 4, 5 and 6. These appellants and additional claimants who are parties to the proceeding were held in the original case (*State ex rel. Ham, Yearsley & Ryrie v. Superior Court,* 70 Wash. 442, 126 Pac. 945) to have no right, title or interest in the waters of Moses Lake as riparian owners, or as owners of the shore land and upland, and they were subsequently held to have no right by appropriation superior to that of the petitioner in this case; and we held in the subsequent case of *Grant Realty Co. v. Ham, Yearsley & Ryrie,* 96 Wash.

616, 165 Pac. 495, that the petitioner had proceeded in good faith and was entitled to the appropriation of the waters and to condemn land and property for the storage and diversion thereof. We there held that, so long as their proceedings were in good faith and diligently prosecuted, their rights related back to the time of their appropriation, and thereby they acquired prior, superior, and exclusive rights as against these parties. In the face of what we have adjudged to be the prior and superior rights of the petitioner, these claimants have proceeded to erect storage and diversion works which we must hold they did at their own peril. While it is true that they are secondary appropriators or users, their works may be of no value whatever to prior appropriators and may not fit into their project at all, and it would be unfair to compel the respondent to pay the cost price of improvements or the value of water alleged to be stored, in the face of respondent's rights, as compensation or damages in order to acquire the dam site for petitioner's own storage and diversion works. Appellants must be limited to the market value of the dam site which is appropriated by the petitioner, that market value to include the availability of the site by reason of its surroundings and natural advantages and whatever improvements may add to its fair market value for any and all purposes at the time of trial and not as erected for the benefit of the appellants for their irrigation works.

On the matter of retaxing the costs, appellants claim witness fees for A. L. Pettigrew, who is one of the appellants, and certainly is not entitled to witness fees. They also claim witness fees for R. K. Tiffany and mileage from Yakima; T. A. Noble and mileage from Yakima; W. R. Hill and mileage from Seattle, and John D. Anderson and mileage from East Farms. On the motion to retax costs, the respondent filed an affi-

davit to the effect that none of the above named persons had any qualification to testify as to the market value of real estate sought to be condemned in this action, or of other real estate in the vicinity of Moses Lake, nor were said parties, or either of them, present at the place of trial at the time thereof for the purpose of testifying as to such values, but each and all of them were called for the purpose of testifying as to the value of the real estate as a dam site in connection with the waters of Moses Lake and as to the value of the dam then standing thereon to the claimants, and as to the value of the dam site and dam in connection with the waters of Moses Lake and the rights of the petitioner therein and its project thereon. All of these matters were denied by the appellants in their counter-affidavit, and it was averred that these witnesses were qualified, and called for the purpose of testifying, as witnesses, to the market value of the premises, taking into consideration all the purposes for which they were adaptable and which would go to make up such value in the open market. Such being the state of the record, the trial court abused its discretion in disallowing witness fees in regard to the above mentioned witnesses, in view of our decision herein, even though, because of the manner in which the case was tried, they did not testify. *Low v. McDonald,* 90 Wash. 122, 155 Pac. 748.

The judgment is reversed, and the cause remanded with instructions to the trial court to proceed in conformity with this decision.

Mitchell, Tolman, Parker, and Mackintosh, JJ., concur.

Mount, J. (dissenting)—In my opinion, there was no error in the trial. The judgment should be affirmed. I therefore dissent.

Main and Fullerton, JJ., concur with Mount, J.