[No. 15694. *En Banc*. March 23, 1920.]

HAM, YEARSLEY & RYRIE, *Appellant*, v. NORTHERN
PACIFIC RAILWAY COMPANY et al.,
*Respondents*.[1]

EMINENT DOMAIN (153) — APPEAL — REQUISITES — BOND — SUFFICIENCY. Appeals in condemnation are taken under the special act, and where the appropriating corporation appeals from a condemnation award and gives bond conditioned to pay whatever amount may be required by the judgment, as provided by Rem. Code, §§ 931, 932, a bond in the sum of $5,000 is ample, though the award was $180,000, where the appellant elects not to take possession; since it is privileged to elect whether to abandon the proceedings or pay the award and take the property, and the only judgment affecting the bond would be one for costs, which could not exceed $5,000.

SAME (153). Since a bond on appeal in condemnation cases is not jurisdictional, an appeal will not be dismissed for insufficiency of the bond without opportunity to amend it or supply a new one.

SAME (80)—COMPENSATION—ELEMENTS—VALUE FOR SPECIAL USE—DAM SITE FOR RESERVOIR. In condemnation of a dam site for the purpose of impounding the waters of a lake, it is error to receive evidence and base the value on the storage capacity of the reservoir created, or the necessities of the owner of the storage rights; but its value as a dam site depends on the relative cost of a dam on such site and its adaptability and advantages for such purposes.

EVIDENCE (211) — OPINION EVIDENCE — COMPETENCY OF EXPERTS. The qualification of expert witnesses as to the value of land condemned for a dam site to create a storage reservoir is peculiarly within the discretion of the trial court.

Appeal from a judgment of the superior court for Grant county, Hill, J., entered October 28, 1919, upon the verdict of a jury rendered in favor of the defendant,

[1] Reported in 188 Pac. 527.

awarding damages in condemnation proceedings, after trial on the merits. Reversed.

*Voorhees & Canfield* and *Merritt, Lantry & Merritt,* for appellant.

*Williamson & Luhman* and *Ferris & Ferris,* for respondents.

TOLMAN, J.—Following our decision in this case on a former appeal, 107 Wash. 378, 181 Pac. 898, another trial was had, resulting in a verdict fixing the value of the property sought to be taken at $180,000. From a judgment thereon, plaintiff appeals.

Respondent moves to dismiss the appeal on the ground that the appeal bond is defective. We have heretofore held that the eminent domain statute, being complete in itself and containing provisions specifying how appeals shall be effected, the general statute relating to appeals does not apply. *Western American Co. v. St. Ann Co.,* 22 Wash. 158, 60 Pac. 158; *Tacoma v. Birmingham Co.,* 50 Wash. 683, 97 Pac. 971; *State ex rel. Davis v. Superior Court,* 82 Wash. 31, 143 Pac. 168; *Chicago, Milwaukee & P. S. R. v. Slosser,* 82 Wash. 467, 144 Pac. 706.

Rem. Code, § 931, relative to appeals in eminent domain cases, so far as here applicable, reads as follows:

"Either party may appeal from the judgment for damages entered in the superior court of the state within thirty days after the entry of judgment as aforesaid, and such appeal shall bring before the supreme court the propriety and justness of the amount of damages in respect to the parties to the appeal: Provided, however, that no bond shall be required of any person interested in the property sought to be appropriated by such corporation, but in case the corporation appropriating such land, real estate, premises, or other property of appellant, it shall give a bond like that prescribed in the next following section,

to be executed, filed and approved in the same manner. . . ."

And in § 932, following, the bond is prescribed only in these words:

"Provided, the corporation aforesaid shall execute and file with the clerk of the court in which such appeal is pending a bond to be approved by said clerk, with sufficient sureties, conditioned that the person executing the same shall pay whatever amount may be required by the judgment of the court therein, and abide any rule or order of the court in relation to the matter in controversy."

Unlike the general appeal statutes, Rem. Code, §§ 1719 and 1722, which provide in effect that an appeal shall be ineffectual for any purpose unless a bond be given in the amount, form, manner and time therein provided, the eminent domain act fails to make the amount and conditions (except so far as conditions are therein specified) of an appeal bond, jurisdictional matters. The chief objections to the bond urged are that no penalty is named therein, and that the justification by the sureties is not sufficient for a supersedeas bond. As to the former, the statute fixes no penalty, the appellant having specifically waived its right to take possession of the property sought, pending the appeal, there was no occasion to assume that the penalty of the bond should be in a fixed amount commensurate with the amount of the judgment, or to ask the trial court to fix a penalty. The bond provides that the obligors

"Are held and firmly bound and by these presents do bind themselves, their successors and assigns, jointly and severally to the above named claimants and additional claimants for the payment of whatever amount may be required by the judgment of the court herein and by any order of the court in relation to the matter in controversy."

Since the appellants waive the right of possession, and on affirmance might still elect whether to abandon the proceedings or pay the award and take the property, the only judgment affecting the bond which could be rendered would be one for costs only. *Port Angeles Pacific R. Co. v. Cooke*, 38 Wash. 184, 80 Pac. 305.

The sureties justified in the sum of $5,000, an amount far in excess of any possible costs, and damages, and we therefore hold the bond sufficient; but were it otherwise, the matters complained of are not jurisdictional and the appeal would not be dismissed until after the determination of the insufficiency of the bond and a failure to amend it or supply a new bond within the time fixed. The motion to dismiss the appeal is denied.

Neither party here attacks the decision on the former appeal, but each strenuously contends that his present position finds support in what was there said. An examination of the previous opinion discloses that the writer took great pains to discuss in detail every point raised, and laid down a specific rule for the guidance of the court in a retrial, which seems to be as plain as the poverty of our language will permit. The rule was so stated as follows:

"A proper theory for the trial court to proceed upon, and admit and reject evidence and instruct the jury is the rule as stated in *Brack v. Mayor, etc., of Baltimore*, 125 Md. 378, 93 Atl. 984, Ann. Cas. 1916E 880, as follows:

" 'The rule is that the market value of the land is to be estimated with reference to the uses and purposes for which it is adapted, and that any special features which may enhance its marketability may properly be considered. But the fact that the land is needed for the particular object sought by the condemnation is not to be regarded as an element of the value to be ascertained. The question is not what the property is worth

to the condemning party, but what could probably be realized from its sale to any purchaser who might desire it for any or all of the purposes for which it is available.' ''

Not only this, but in passing upon the offers of proof and instructions given, it was there plainly stated what character of proof was and what was not admissible.

The main contention is that the trial court misconstrued or disregarded these instructions, and permitted evidence as to value to go to the jury based wholly upon those conditions which were excluded by our former opinion, i. e., that the land is needed for the particular purpose petitioners have in mind, and what its value was supposed to be to the condemning party for such purpose. The following excerpts from the testimony of the witness Cronover will clearly illustrate on what respondent's witnesses base their opinions as to the value of the land sought. After testifying on direct examination that he took into consideration the natural advantages of this particular site, for the purpose of building a dam, Cronover placed the value of the property at $400,000. On cross-examination, the following took place:

"Q. Now what elements do you take into consideration with reference to this real estate upon which you base the market value, $400,000? A. Its storage capacity. Q. Storage capacity, anything else? A. I think not. Q. Nothing else; you don't know anything about its value as grazing land? A. The 16.2 acres of land? Q. Yes. A. Yes, sir. Q. What do you know about that? A. I would consider it worth $2 or $3 an acre anyway, as grazing land. . . .

"The Court: Just state what you mean. A. It stores so many acre feet, and I consider the value of the storage at $9 per acre foot; the storage capacity is 48,000 acre feet; therefore, its value is $432,000, which I have rounded out to $400,000. . . . Q. Now you fixed the value there; you say there is eight feet of

water stored there, you are fixing this value as you are in including in that, the value of that eight feet of water, ain't you? A. No, sir; it has value as a storage reservoir. Q. Yes, for that. Now this lake has several square miles, hasn't it? A. Yes, sir. Q. And it takes this number of square miles to store this water, doesn't it? A. Yes, sir. Q. And the value that you are fixing there then, must include in it the bed of the lake and the area of the lake, mustn't it? A. Not necessarily. Q. You would have to have the bed of the lake there, and that area, to use the reservoir, wouldn't you? A. Yes, sir. Q. Would that dam site be worth anything to any person who didn't own the waters of Moses Lake? A. Yes, sir. Q. In what way? A. It is the key to the situation; the water is no good without the dam site; neither is the dam site of any great value without the water. . . . Q. The object of this dam site then is simply to stop up this place in the bank, where in some time past years the water has broke through there? A. The object of the dam site is to create a storage reservoir. Q. And that consists of the whole of Moses Lake, doesn't it? A. Yes, sir, I think so. Q. And there are several miles of shore line of it? A. Yes, sir. Q. And there is about 36 miles of shore line there? A. There must be more than that. Q. Well, we will say there are several miles. A. Yes. Q. Now you say that that storage capacity there is worth this amount of money? A. Yes, sir. Q. And what is the width of this shore line where this dam stops up that place there? A. It appears to be a couple of hundred feet. Q. Then this couple of hundred feet there of that shore line you figure to be worth $300,000 or $400,000? A. Together with the storage capacity. Q. Well, then you figure the entire shore lines of the lake that go to make up that storage capacity worth $400,000? A. The flowage rights would be included, yes. . . . Q. Now if you had that, then your expectation would be getting something out of the people who owned the water, or buying from them, wouldn't it? A. Probably. Q. Then the only value that that land has is for the purpose of either purchasing from Ham, Yearsley &

Ryrie, or selling that dam site to Ham, Yearsley & Ryrie, isn't it? A. Well, that would be up to the purchaser; he could do as he pleased about that.''

On redirect and cross-examination, the same witness testified that, in fixing the value, he had considered the natural advantages, which he stated to be that Crab Creek flows through it; the dam would be across Crab Creek; that Crab Creek is the only outlet to the lake, and a reservoir cannot be created without the use of the property.

A reading of the testimony of respondent's other witnesses makes it quite evident that they were imbued with Cronover's ideas, and that their opinions as to the value had the same basis. After making separate motions as to each witness to strike the opinion as to value, as soon as the cross-examination had developed upon what it was based, appellant moved separately and collectively to strike from the testimony of each and all of respondent's witnesses, and withdraw from the jury the opinions given as to the value of the land sought to be condemned, for the reason that each of the witnesses has shown by his testimony on cross-examination that his opinion was not based upon the proper rule; that each had based his opinion upon the value of the entire reservoir to be created by the construction of the dam, and upon petitioner's necessity. We are quite convinced that this motion was well taken and should have been granted, because the whole of the testimony as to value is based upon those matters which this court said in its former opinion cannot be considered, and apparently upon but little if anything else.

The value of this land should be ascertained for all purposes for which it is shown to be available, either agricultural, grazing, townsite, manufacturing, or other purpose if such there be, or for the purpose of a dam-

site, and its value for the last named purpose should be arrived at by the same test as would be applied in ascertaining its value for the first named purpose, namely: what advantages does it possess in and of itself as a dam site. If an adequate dam can be constructed here four hundred feet long and twelve feet high at a cost of thirty-five thousand dollars, what is the value of the site as compared with what it would have been if the dam must necessarily have been eight hundred feet long and cost seventy thousand dollars, or but one hundred feet long and cost ten thousand dollars? If the material to be removed in constructing the dam is easily and cheaply removable; the natural walls comparatively close together, perpendicular, impervious to percolating waters; or there are any other advantages rendering the construction of the dam inexpensive or causing the dam, when constructed, to be peculiarly safe and free from defects which might cause loss, this may be shown; but in no event should any evidence based on the storage capacity of the lake, or upon appellant's necessity to use this particular site in order to avail itself of its rights to the waters and to store and divert the same be permitted to go to the jury. Unless that is done, the jury will be permitted to award to the respondent not alone the value of their land as a dam site, but also the total value of appellant's water and storage rights, and it was apparently upon this theory, and this theory only, that the jury arrived at its verdict upon the trial last had.

The offers of proof considered and approved on the former appeal indicate no intention to bring before the jury an opinion of value based upon the storage capacity of the lake or the petitioner's necessity, and unless the witnesses can eliminate such matters from their minds, their opinions of value are wholly inadmissible.

Some contention is made that certain of respondent's witnesses were not qualified to give opinion evidence. In view of the peculiar nature of the controversy here, and the acknowledged lack of any rigid criterion for fixing the value of the property sought, we think the matter of the qualification of expert witnesses was one peculiarly within the discretion of the trial court. Jones, Evidence, 369; Wigmore, Evidence, 561; *Czarecki v. Seattle & S. F. R. & Nav. Co.*, 30 Wash. 288, 70 Pac. 750.

We realize that this matter has been long before the courts, and ought to be brought to a speedy conclusion; but as the record stands we are unable to direct a judgment, and notwithstanding the delay which will ensue, and the delicate and trying duty which will be cast upon the trial court to eliminate from the consideration of the jury all matters except the property sought to be taken, and its value in and of itself for any and all purposes for which it is available, we are constrained to reverse the judgment appealed from and remand the case for a new trial in accordance with the views herein expressed.

Reversed and remanded.

HOLCOMB, C. J., PARKER, MACKINTOSH, BRIDGES, and MOUNT, JJ., concur.