[No. 33924. *En Banc.* February 20, 1958.]

THE STATE OF WASHINGTON, *Respondent,* v. THE MOTTMAN
MERCANTILE CO., INC., *Appellant.*[1]

[1]Reported in 321 P. (2d) 912.

*Pebbles & Swanson* and *Smith Troy*, for appellant.

*The Attorney General* and *Paul E. Sinnitt, Special Assistant*, for respondent.

HILL, C. J.—The state of Washington seeks to condemn a tract of land, containing 15.6 acres, for the purpose of acquiring material for highway construction, as it is empowered to do by RCW 47.12.010. That statute provides that the state may acquire certain property and property rights "including deposits of road materials and rights-of-way."

There was a verdict in the sum of "Three Thousand Three Hundred and Fifty Dollars ($3,350) ((150.00 Per A.))." One hundred and fifty dollars per acre would have been two thousand three hundred and forty dollars; but an additional one thousand dollars was added, by stipulation of the parties, for the timber on the property.

From the judgment and decree of appropriation entered on the verdict, the owner (Mottman Mercantile Co., Inc.) appeals.

Witnesses for the state testified that, in their opinion, the fair, cash value of the tract as acreage, and without the timber, was from one hundred twenty-five dollars to one hundred and fifty dollars an acre. These witnesses thought the highest and best use of the property was for residential purposes (subsistence farms), and while giving consideration to the possible use of the property as a gravel pit, regarded it as no more valuable for that purpose because of the claimed excess of supply over demand for gravel similar to that on the property.

The property owner's principal, expert witness testified that the property's highest and best use was as a "potential" gravel pit; that it had no other practicable use; and that, as such, it had a market value of six hundred dollars an acre, or nine thousand three hundred and sixty dollars, which, with the one thousand dollars for the timber, made a round

figure of ten thousand three hundred and fifty dollars. George Mottman, the president of the corporation which owned the property, placed the value at twenty-four thousand dollars.

The property being acquired by the state is referred to throughout as "pit site J-49," and the state's witnesses concede that it contains 283,000 cubic yards of usable material, and that it could be used for "selected roadway borrow" and for "crushed stone surfacing." It is generally referred to throughout the testimony as gravel.

In view of the fact that there is no suggestion that the state could acquire such material for less than ten cents a cubic yard, under a private enterprise economy, it would appear to be a very profitable acquisition for the state. The ultimate value or benefit to the state is, of course, not the criterion, and it cannot be argued that the property owner is injured because the state is benefited.

The purpose of the condemnation proceeding at this stage is to determine the fair market value of the property, without any consideration of the use to which the state is going to put the property or whether the property owner desires to sell.

Since there was evidence that the highest and best use of the 15.6 acres of land, with which we are here concerned, was as a gravel pit, the property owner was entitled to present any evidence which would enable the jury to determine its fair market value for that purpose. Despite the fact that it is obvious that no one would either buy or sell a gravel pit without having some idea of the amount of gravel available, and its value in its natural condition, the trial court, at the state's insistence, kept out proffered evidence as to the present value of the gravel in its natural state, on a cubic yard basis.

■ This error stems from a well recognized and sound general rule, *i.e.*, that it is improper to arrive at a conclusion concerning the value of property which has a mineral content by multiplying the assumed number of cubic yards of material available times a given price per unit. *United*

*States v. Land In Dry Bed of Rosamond Lake, Cal.* (1956), 143 F. Supp. 314.

Even where, as in this case, the amount of usable material is not assumed, but conceded, no one would argue that the value of the land is the number of cubic yards available, multiplied by a unit price. If one were to attempt to apply such a test, as pointed out by the state in its brief,

". . . you are immediately in a complete field of speculation as to market demand, how many years will that demand be present, how many millions or hundreds of millions of cubic yards of like materials are available in the area, if all are put on the market at the same time what happens to the market, what are the costs of extracting the materials, what are marketing costs, together with many other variable factors which affect the actual yardage costs of materials."

However, from the generally recognized rule to which we have referred, the state reasoned that evidence of the present value of gravel, in its natural state, on a cubic yard basis was inadmissible, which is a *non sequitur.* Nor does our opinion in *Seattle, Port Angeles & L. C. R. v. Land* (1914), 81 Wash. 206, 142 Pac. 680 support the conclusion that such testimony was inadmissible. The property owner, in that case, was trying to establish speculative profits, based upon his proposed method of handling the gravel. Nichols in his work on Eminent Domain, clearly states the applicable rule:

"If the extent and quality and value of the stone as it lies on the land may not be considered, there would be no way by which the value of the land with the minerals could be shown. All legitimate evidence tending to establish the value of the land with the minerals in it is permissible. This is not to say that such minerals are to be separately evaluated but that consideration may be given to the quantity of the mineral that can be extracted and to the value thereof purely as evidence for arriving at the value of the land." 4 Nichols Eminent Domain (3d ed.) 245, § 13.22 [1].

In *National Brick Co. v. United States* (1942), 131 F. (2d) 30, 31, in discussing the admissibility of evidence as to the per ton value of sand in place on the property being ac-

quired, which evidence had been rejected by the trial court, the District of Columbia court of appeals said:

"This opinion of the Court was, of course, wrong, for no rule is better established than that the special value of land due to its adaptability for use in a particular business is an element which the owner of land is entitled to have considered in determining the amount to be paid in just compensation.

"So much as this was said by the Supreme Court in *Mitchell v. United States*, 267 U. S. 341, 45 S. Ct. 293, 69 L. Ed. 644. And we know of no other evidence by which the jury could be properly guided in determining the value of the property than to be told the per ton value of the sand as it lay, or without this knowledge, how the jury could ever have reached a judgment based on anything more than guess or speculation."

Counsel for the property owner in this case made the following offer of proof:

"May it please the Court, on the authority of what is said in the Roeder case, we offer to prove by this witness, sworn and testifying, that if permitted to testify, he would testify that the value of each yard of sand and gravel and building material contained in the property of the respondents, pit site J-49, is 10¢ per yard."

To this offer, the attorney for the state stated its objections as follows:

"Objection, Your Honor. My objection to the offer of proof is that it is based upon an improper method of arriving at a conclusion of value."

That objection was sustained.

 It was legitimate evidence, not as affording a measure of recovery, but as explaining and supporting the estimates made of the market value of the property. See *Seattle & Montana R. Co. v. Roeder* (1902), 30 Wash. 244, 70 Pac. 498, 94 A. S. R. 864; *Cade v. United States* (1954), 213 F. (2d) 138. The error in refusing to admit it, in this case, was, of necessity, prejudicial because it prevented the property owner from presenting to the jury this evidence as to the value of the gravel, in place on the land, in support

of his theory that the highest and best use of pit site J-49 was as a gravel pit.

■ The trial court could properly instruct the jury, as it did, that the value of the property was not to be "based upon any method of multiplying a certain total cubic yards of gravel times a certain price per yard." As was said in *United States v. Land in Dry Bed of Rosamond Lake, Cal., supra,*

"As in all cases involving the opinion of the expert as to fair market value, the jury should be instructed that the factors considered by the expert are not in themselves direct evidence of the fair market value of the land condemned, but may be considered by the jury only for the purpose of determining what weight, if any, the jury accords to the testimony of the expert in his ultimate opinion as to the fair market value of the land in question as of the date of taking."

There is no contention but that the jury could have concluded that the amount of gravel contiguous to pit site J-49 was so great, and the foreseeable demand so slight, it was more valuable for home sites than it was for a gravel pit. That was the state's position, and it put in substantial evidence on that theory. The property owner was entitled to present his theory that the highest and best use of pit site J-49 was that for which the state was acquiring it, *i.e.,* a gravel pit. The refusal to receive his evidence as to the value of the gravel in place eliminated an important factor in determining the market value of pit site J-49. Such evidence is permissible because, as Nichols points out,

"If the extent and quality and value of the stone as it lies on the land may not be considered, there would be no way by which the value of the land with the minerals could be shown." 4 Nichols, Eminent Domain, *supra.*

March 22, 1957, the ninth circuit court of appeals in *Phillips v. United States,* 243 F. (2d) 1, 4, reversed the district court for the eastern district of Washington, southern division, and sent a case back for retrial because the trial court had unduly restricted the property owners in their evidence as to the value of mineral rights. (Oil rights in that parti-

cular case.) In that case, the circuit court quotes from *Mississippi & Rum River Boom Co. v. Patterson* (1879), 98 U. S. 403, 407, 25 L. Ed. 206, as follows:

" 'In determining the value of land appropriated for public purposes, the same considerations are to be regarded as in a sale of property between private parties. The inquiry in such cases must be what is the property worth in the market, *viewed not merely with reference to the uses to which it is at the time applied, but with reference to the uses to which it is plainly adapted*; that is to say, what is it worth from its availability for valuable uses?' "

It further quotes from *Simpson v. Shepard* (1913), 230 U. S. 352, 434, 57 L. Ed. 1511, 33 S. Ct. 729, 754, as follows:

" 'The ascertainment of that value is not controlled by artificial rules. It is not a matter of formulas, but there must be a reasonable judgment, having its basis in a proper consideration of *all* relevant facts.' [Emphasis supplied.]"

Unless we can say that if we were buying a gravel pit we would not regard the amount of the gravel, or its value in the land, as a relevant fact in determining its market value, we must of necessity hold that the evidence offered should have been admitted.

▮ The property owner also urges that instruction No. 8 was erroneous for the reason that it "unduly emphasized for the consideration of the jury the factor of acreage property." This assignment of error is also well taken.

What seems to us a very fair, clear, accurate, and comprehensive statement of the law applicable to the case was slanted unfairly against the property owner by the injection of instruction No. 8, which tells the jury that they are to "consider all of the property . . . as acreage property," and, after referring to a consideration of the property's adaptability for the extraction of gravel, it tells the jury that

" . . . as this property is not now being used for that purpose and at present is acreage property, you are to arrive at your verdict by valuing this property as acreage property."

This instruction is in conflict with instructions Nos. 7, 7A, and 9, which tell the jury that in determining the value of the land being taken, they are not limited to the value of the land for the purpose for which it is or has been used. However, those instructions are general and abstract statements of law, and instruction No. 8 is slanted, specific, explicit, and, we believe, prejudicial.

■ The failure to give a requested instruction relating to the consideration that may be given to the value of the "building material that could be gotten from the land," is also assigned as error.

It is true that the language of the instruction receives support from portions of the opinion in *Seattle & Montana R. Co. v. Roeder, supra*; that case makes it clear, however, that

". . . the profits or price or value of the minerals, if the minerals themselves are taken out, may not be considered, yet the value and extent and quality of the stone, or the buildings, or the timber, as the case may be, as it exists upon the land may be considered."

The limitation, "as it exists upon the land," is not included in the proposed instruction, and it emphasizes, as a guide to value, evidence which is admissible only to explain and support the estimates made of the market value of the property. The trial court did not err in refusing to give the requested instruction in the form suggested.

Our conclusion that there must be a new trial for the reasons indicated renders it unnecessary to consider the appellant's assignments of error predicated upon the denial of its motion for mistrial.

New trial granted.

DONWORTH, FINLEY, WEAVER, ROSELLINI, and FOSTER, JJ., concur.

MALLERY, J. (dissenting)—I do not agree that it was reversible error to exclude the testimony of Mr. Dunn, who was a gravel-pit owner and not an expert on land appraisals, to the effect that gravel was selling at retail in place in the

community for ten cents a yard. Indeed, to present the jury with such an isolated fact invites error.

Land appraisals fall in the realm of expert opinion. The jurors have neither the knowledge nor the experience to enable them to evaluate the various factors involved. The better reasoned authorities hold that a unit price per yard of the mineral content of land should not be presented separate and apart from an expert's opinion as to the fair market value of the land in question. Even then, it should appear as no more than *one* of the factors by which an expert arrives at his opinion. See *United States v. Land in Dry Bed of Rosamond Lake, Cal.*, 143 F. Supp. 314.

I, therefore, think it was proper to exclude the testimony in question, because Mr. Dunn was never qualified as an expert and could not give opinion evidence as to the value of the land. In this situation, isolated evidence of the retail unit value of gravel in place would invite the jury to adopt a computation of the value of all of the gravel at the unit price as to the value of the land.

I dissent.

OTT, J. (dissenting)—I agree with the statement of the majority that the purpose of a condemnation proceeding is to determine the fair market value of the property. The jury was required to make two determinations: (1) what was the property's highest and best use, and (2) what was the *fair market value of the property* at the time of the taking.

Assuming that the jury found that the highest and best use was as a gravel pit, was there error in the trial which precluded them from determining its fair market value?

Fair market value was properly defined in instruction No. 4 as

" . . . the price which the property will bring when it is offered for sale by one who desires, but is not obliged to sell it, and is bought by one who is under no necessity of having it. It is not the value put on the property by the owner because of any sentiment which he has for the property, nor because he may be unwilling to sell it, nor is he

limited to what the property will bring at a forced sale. . . . you will, in fixing the value of the property, consider it simply as the case of a willing seller and a willing buyer without the necessity on the part of either to sell or to buy."

Instruction No. 6 told the jury that they should

". . . take into consideration all of the uses and purposes for which the land is adapted or suitable; the character and quality of the tract taken, the shape, size and contour of the land and the feasibility, if any there may be, of operating the land for the uses and purposes for which it may be adapted as shown by the evidence."

These instructions are in accord with the rule stated in *Donaldson v. Greenwood*, 40 Wn. (2d) 238, 242 P. (2d) 1038 (1952), and *In re Town of Issaquah*, 31 Wn. (2d) 556, 197 P. (2d) 1018 (1948).

In *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.*, 107 Wash. 378, 181 Pac. 898 (1919), we approved the following:

" 'It [value] includes every element of usefulness and advantage in the property. . . .

" 'This does not mean that all the capabilities are to be priced separately and the aggregate put down as the true value, for they do not exist independently of each other, and cannot all be realized at the same time; nor will it do to restrict the estimate to any one of them, because in one view that would exclude the other elements altogether, and in another view it would tend to make the degree of benefit to the party appropriating and condemning for a particular purpose the real measure of value, which is never allowable.' *Southern R. Co. v. Memphis*, 126 Tenn. 294, 148 S. W. 662, 41 L. R. A. (N. S.) 828, 838."

In the same opinion, 2 Lewis on Eminent Domain (2d ed.) 1056 is quoted with approval:

" 'The conclusion from the authorities and reason of the matter seems to be that *witnesses should not be allowed to give their opinions as to the value of property for a particular purpose, but should state its market value in view of any purpose to which it is adapted.* The condition of the property and all its surroundings may be shown, and its availability for any particular use. If it has a peculiar adaptation for certain uses, this may be shown, and if such peculiar adaptation adds to its value the owner is entitled

to the benefit of it. *But, when all the facts and circumstances have been shown, the question at last is, what is it worth in the market.'* " (Italics mine.)

In *Ham, Yearsley & Ryrie v. Northern Pac. R. Co.*, 110 Wash. 467, 188 Pac. 527 (1920), we held that the opinion of an expert witness should have been excluded when it was shown that he based his opinion upon the ultimate value of the use to which the condemner intended to put the property.

In the instant case, it is apparent that the witness Dunn based his opinion as to the value of the property solely upon the product of the estimated quantity of gravel in the property and the price that he was currently receiving for gravel. Testimony as to the unit price of gravel is not a criterion of what a willing purchaser would pay, *in the absence of a showing that there is a present demand for the entire quantity at the unit price.*

The majority concede that evidence of the unit price of the gravel content is not an element, under the facts in this case, to establish market value of the entire tract. Yet, the majority would permit the witness to testify to the value solely upon such a basis. Mr. Dunn did not qualify as an expert. He was not shown to be in the business of buying and selling real estate. He was qualified to testify as to the price that he was currently receiving for gravel which he sold from a pit on adjoining land, but this testimony was not indicative of market value, nor was it a criterion, in the absence of a showing of a present demand which a willing purchaser would use as determinative of the value of the entire area.

As stated in *San Diego Land & Town Co. v. Neale*, 88 Cal. 50, 63, 25 Pac. 977 (1891):

"We think that where a witness bases his opinion *entirely upon incompetent and inadmissible matters, or shows that such matters are the chief elements in the calculations which lead him to such conclusions, it should be rejected altogether.*" (Italics mine.)

Limiting this discussion to the offer of proof of the defendant, namely, that Dunn would testify as to what he was

receiving per yard for his gravel, such testimony is not admissible. It is for the expert witness to testify as to his opinion of the value of the property. The jury cannot be expected to arrive at fair market value by considering only particular facts.

"Just compensation includes *all elements of value* that inhere in the property, but it does not exceed market value fairly determined." (Italics mine.) Oleck on Damages 412, § 220.

To permit such testimony by Dunn would be inviting the jury to segregate the value of the gravel from the value of the land, and such segregation, the majority admit, is an improper method of arriving at fair market value.

In *United States v. Land in Dry Bed of Rosamond Lake, Cal.*, 143 F. Supp. 314 (1956), the court stated the rule to be

" . . . that the landowner is entitled to have an expert or lay witness describe the commodity or substance on the land, the quantity thereof, the going price thereof as *factors* only, upon which the expert may in part base his value as to the *fair market value* of the parcel in question; that a landowner is not entitled to present testimony as to the fair market value of the mineral or timber or other substance apart from the value of the land. . . . In other words, a clear distinction must be drawn between what is presented and considered as a *factor* underlying the expert's opinion as contrasted with opinion as to the fair market value of the substance, timber or mineral itself, apart from the land."

Dunn's testimony in this case would merely establish the current value of the gravel, apart from the land. It is not probative of the fair market value of a gravel pit, or of what a willing buyer would pay for 15.6 acres of land which could be used as a gravel pit. It was not error to exclude this testimony.

The majority further hold that the trial court erred in giving instruction No. 8. Reading the complete instruction reveals that the jury *were* instructed that they should consider any possible value the land might have as a gravel pit. There is no contention that acreage property cannot be used as a gravel pit. Instruction No. 10 states:

"You are further instructed that in arriving at just compensation to the owners for the land taken in this case, you are to consider the timber as well as the sand, gravel and building materials, all to be a part of the land to such extent as you find the same to be present from the evidence."

Considering this instruction, together with Nos. 2, 6, 7, and 9, the language of instruction No. 8 was not prejudicial to the appellant.

The judgment should be affirmed.

HUNTER, J. (dissenting)— I am in agreement with the reasoning in the majority opinion that, in a condemnation proceeding, the market value of gravel in place is *a factor* that may be considered, together with all other relevant factors, in determining the fair market value of the property. However, this consideration must be restricted to a person qualified to express an opinion, as one of the factors *he* considers in arriving at *his* opinion of the fair market value of the entire parcel, and may be considered by the jury only in evaluating the weight of the expert's testimony.

The majority cite *United States v. Land in Dry Bed of Rosamond Lake, Cal.*, 143 F. Supp. 314 (1956), quoting therefrom:

"As in all cases involving the opinion of the expert as to fair market value, *the jury should be instructed that the factors considered by the expert are not in themselves direct evidence of the fair market value* of the land condemned, *but may be considered by the jury only for the purpose of determining what weight, if any, the jury accords* to *the testimony* of the *expert in his ultimate opinion as to the fair market value* of the land in question as of the date of taking." (Italics mine.)

In the cited case, the court further concluded, in part:

". . . that the landowner is entitled to have an expert or lay witness describe the commodity or substance on the land, the quantity thereof, the going price thereof as *factors* only, *upon which the expert may in part base his value as to the fair market value of the parcel in question*; that a landowner is not entitled to present testimony as to the fair market value of the mineral or timber or other substance apart from the value of the land. . . . In other words,

*a clear distinction must be drawn between what is presented and considered as a factor underlying the expert's opinion as contrasted with opinion as to the fair market value of the substance, timber or mineral itself, apart from the land."* (Italics mine.)

In the instant case, the pertinent testimony elicited from the purported expert, Dunn, was as follows:

"Q. Mr. Dunn, in arriving at your conclusion, did you make an estimate of the number of yards, of cubic yards of material in place on the Mottman property? A. Yes, I did. Q. Did you then — . . . Q. Did you then multiply this times a royalty basis? A. Yes. Q. And was that the way you arrived at your conclusion as to value on the acre basis? A. That is what I did."

The trial court thereupon promptly and properly granted the state's motion to strike Dunn's testimony as to his opinion of the market value of the respondent's land. This method of determining value, assuming that Dunn was qualified to express an opinion of market value, was clearly in violation of the rule recognized by the majority, and announced in the *Rosamond Lake* case, wherein the court further stated:

"(1) that a landowner in dealing with a parcel of land on which there is a mineral, timber or like substance may not introduce expert testimony by which the expert multiplies the gross material present by the market value per unit thereof and thereby arrives at a figure which purports to be fair market value for the parcel; . . . "

After this testimony was stricken, the following offer of proof in question was made:

"May it please the Court, on the authority of what is said in the Roeder case, we offer to prove by this witness, sworn and testifying, that if permitted to testify, he would testify that the value of each yard of sand and gravel and building material contained in the property of the respondents, pit site J-49, is 10¢ per yard."

The offer of proof was properly rejected because the value per unit of gravel in place at ten cents per yard was not shown to have been considered as a factor by any expert witness who was permitted to testify as to market value of the land. The closest consideration of this factor by any

expert was that given by Holbrook, the landowner's expert, who did consider a royalty basis as one of his factors, but the record is silent as to any consideration given by him to a unit value of ten cents per yard, as proffered by the respondent in the offer of proof.

As recognized in the *Rosamond Lake* case, there are only two ways by which market value can be proved: (1) by comparable sales, and (2) by opinion testimony. The court in that case stated:

"Such test of fair market value is generally made in the case of land by the use of comparable sales. If there are no comparable sales, or an insufficient number of them to indicate the market, then secondary or opinion evidence may properly be used. *Olson v. United States, supra*; Minnesota Rate Cases (*Simpson v. Shepard*), 230 U. S. 352, 33 S. Ct. 729, 57 L. Ed. 1511; *Stephenson Brick Co. v. United States*, 5 Cir., 110 F. 2d 360; *Welch v. Tennessee Valley Authority*, 6 Cir., 108 F. 2d 95, certiorari denied 309 U. S. 688, 60 S. Ct. 889, 84 L. Ed. 1030."

The effect of the majority holding is that the offer of proof of the unit value of gravel is admissible, irrespective of this factor having been considered by an expert witness in arriving at his conclusion, thereby permitting the jury to consider it separate and apart from its evaluation of the opinion of the expert.

The majority holding has the additional effect of qualifying each member of the jury as an expert to determine fair market value by examining independent relevant factors and then drawing a conclusion as to market value therefrom, as an expert would be entitled to do; whereas, the jury is entitled to consider only comparable sales or opinion evidence as to the market value of the land in arriving at its verdict in this type of case.

I concur with Judge Ott that instruction No. 8 was not prejudicial for the reasons expressed in his dissenting opinion.

I dissent.

---

March 19, 1958. Petition for rehearing denied.